Darla HUMES, Appellant,

v.

Thomas HALLMARK, Appellee.

No. 03–93–00589–CV.

Court of Appeals of Texas, Austin.

March 15, 1995.

---

476 ■

William L. Schroeder, New Braunfels, E.S. Prashner, San Antonio, for appellant.

Lynne Berry Morris, Wimberley, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

PER CURIAM.

Appellant Darla Humes appeals from a judgment rendered on a jury verdict in favor of appellee Thomas Hallmark on claims of common-law conversion and of wrongful seizure under Tex.Prop.Code § 54.046 (West Supp.1995). The jury awarded Hallmark damages of $18,020 for the converted property, attorney's fees of $11,000, exemplary damages of $6,000 and $200 for a security deposit that was never returned. Humes brings six points of error, all of which complain that there is no evidence, or insufficient evidence, to support the jury finding of the value of the converted property. We will affirm the trial court's judgment.

### FACTS

Hallmark's claims arose from an incident in which Humes, his landlord, removed his belongings from the house he rented from her. Some of the items were never returned and others were returned damaged. The items included Hallmark's tools of trade, household belongings, and collection of Indian artifacts.

### THE ANALYSIS

In point of error one, Humes complains that the trial court erred in denying her motion for an instructed verdict based on Hallmark's failure to prove the market value of the property at the time and place of conversion. Humes waived this objection because she did not re-urge her motion at the conclusion of evidence. *See Shindler v. Marr & Assocs.*, 695 S.W.2d 699, 706 (Tex. Civ.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 114 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.). We overrule Humes' first point of error.

In points of error two and four, Humes complains that there was no evidence to support the damage award. In deciding a no-evidence point, we consider only the evidence and inferences tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986), *cert. denied*, 498 U.S. 847, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We will overrule a no-evidence challenge if more than a scintilla of evidence supports a verdict. *Freeman v. Texas Compensation Ins. Co.*, 603 S.W.2d 186, 191 (Tex. 1980).

The single jury issue regarding the value of the destroyed property encompassed damages for Hallmark's tools of trade, household goods, and collection of Indian artifacts. Since our analysis of the value of the Indian artifacts is determinative, we do not address the evidence regarding the value of the household goods or tools of trade. Also, since we rest our decision on the law of conversion, we do not address the theory of wrongful seizure.

### A. Nature of Indian Artifacts

Casey Bren Wulf testified as an expert regarding the market value of the artifacts. He testified that Indian artifacts range in age from 15,000 to 1,000 years old and are

generally bought and sold at Indian artifact shows, flea markets, and specialty shops, and that a standard price guide is published. He also testified regarding factors that affect the price: the quality of workmanship, the quality of the material, the location at which the artifact was found, and the age and condition of the artifact.

## B. Place of Conversion

■ Damages for conversion are measured by market value at the place of conversion. *Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex.1982). Humes argues that Wulf's testimony was incompetent to establish the value of the Indian artifacts at the place of conversion because Wulf did not explicitly limit his testimony to the market value of the Indian artifacts in Comal County. Wulf testified as to market values in "this area of Texas."

We hold that Wulf's testimony establishes the value of the artifacts at the place of conversion on two bases. First, Wulf's testimony indicates that "this area" referred to the place of conversion. Second, to the extent that "this area" referred to an area larger than the place of conversion, the evidence is relevant to establish market value at the place of conversion since the evidence does not show that the value at the place of conversion differs from the value in the larger area.

### 1. Definition of "Place"

■ The first issue is to define the "place" of conversion when the conversion occurs outside the corporate limits of a city and near the boundary of two counties. Recognizing that market value does not necessarily change at the boundaries of political subdivisions, we hold that in such an instance the "place" of conversion is a reasonable area surrounding the precise location at which the conversion occurred. What is reasonable turns on the circumstances involved.

■ In this case, the precise location of the conversion is the Canyon Lake area of Highway 306 in Comal County. We take judicial notice of the fact that that portion of Highway 306 is as close to San Marcos and Wimberly in Hays County as it is to New Braunfels in Comal County. *See Ellis v. Heidrick*, 154 S.W.2d 293, 294 (Tex.Civ. App.—San Antonio 1941, writ ref'd) (taking judicial notice that Harlingen, in Cameron County, is close to Mercedes, in Hidalgo County). San Marcos and Wimberly are within a reasonable area surrounding the precise location of the conversion, and therefore both come within the definition of the "place" of conversion.

### 2. Meaning of "this area"

■ Although "this area of Texas" was not defined,[1] the record indicates that Wulf considered "this area" to be the place of conversion. Wulf had earlier been asked to name some of the people to whom he had sold artifacts in "this area." He named three individuals and one category of individuals. The category of individuals was persons who had bought artifacts from him at his home in San Marcos, and one of the named individuals was "Buck" at Buck's Trading Post in Wimberly. Although the record does not indicate where the other two named individuals lived, the testimony indicates that "this area of Texas" was the place of conversion. Further, since Wulf began as a hobbyist and then started a part-time business out of his home in San Marcos, the primary basis for his expertise is centered around the place of conversion. *See Stewart v. Frazier*, 461 S.W.2d 484, 487 (Tex.Civ.App.—Dallas 1970, no writ) (although words "Dallas, Texas" did not appear in question or response, record as whole showed that discussion of values related to values in Dallas); *Cree v. Miller*, 255 S.W.2d 565, 574 (Tex.Civ.App.—Eastland 1953, writ ref'd n.r.e.) (market value established in Lamesa when witness who was in business in Lamesa, and who had repaired and inspected truck in Lamesa, testified as to values "there"); *Sherwin–Williams Co. of Texas v. Delahoussaye*, 124 S.W.2d 870, 874 (Tex.Civ.App.—Fort Worth 1939, no writ) (testimony regarding market value in "this locality" established market value in City of

1. Humes did not object to the testimony on the ground that it was unclear.

Wichita Falls).[2] We conclude that Wulf's testimony as a whole indicates that Wulf considered "this area" to be the place of conversion.

### 3. Evidence relevant in measuring the market value of Indian artifacts at the place of conversion

Further, to the extent that "this area" refers to an area larger than the place of conversion, the evidence would be relevant to establish market value at the place of conversion since the evidence does not indicate that the market value of Indian artifacts in a more regional area differs from the market value of Indian artifacts at the place of conversion. *O'Donnell v. Preston*, 301 S.W.2d 288, 289 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n.r.e.) (range as to time and place to which evidence shall be confined depends on circumstances). The breadth of the area within which market value at the place of conversion may be measured is determined by the nature of the object converted. The value of items which are unique and stationary may need to be measured in a small area. *See, e.g., Peter Salpeter Energy Co., Inc. v. Crystal Oil Co.*, 524 S.W.2d 383, 386–87 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd) (market value of converted casing in ground must be proven as to value in ground). Conversely, the market value for other types of personalty may be measured in a much broader area if the market for that type of property is broader and more standardized. *Shaw's D.B. & L., Inc. v. Fletcher*, 580 S.W.2d 91, 96 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ) (market value of silverware in Houston established by manufacturer's price list); *Ellis*, 154 S.W.2d at 294 (market value of used car in Harlingen relevant to determine market value of used car in Mercedes).

Wulf's testimony regarding Indian artifacts establishes that the value in a larger area than the place of conversion would be relevant evidence to determine the value of Indian artifacts at the place of conversion. Artifacts are bought and sold by hobbyists in a broad market and are collector's items for which a widely published price guide is printed. *See Shaw's D.B. & L., Inc.*, 580 S.W.2d at 96; *Ellis*, 154 S.W.2d at 294. Further, the precise location in Texas in which the goods are sold is not one of the factors that Wulf testified would affect the value of the artifact. Nothing indicates that the price for which one could sell an artifact in a more regional area would differ from the price for which one could sell an artifact in the place of conversion.

### C. Time of Conversion

Market value must be established at the time of conversion. *Prewitt*, 643 S.W.2d at 123. Humes also objects that Wulf's testimony was not sufficiently limited in time because it was not limited to the date of conversion, May 23, 1987. Wulf testified as to the price of Indian artifacts in "1987." The span of time within which the value of the converted property must be measured also turns on the nature of the object converted.

The value of commodities or stocks may need to be established within days or weeks of the actual conversion in a rapidly changing market. However, the time within which to measure the market value of thousand-year-old Indian artifacts collected by hobbyists need not be so compressed because the value of the artifacts is not subject to the same type of market flux. *Chandler v. Mastercraft Dental Corp. of Tex., Inc.*, 739 S.W.2d 460, 469 (Tex.App.—Fort Worth 1987, writ denied) (market value of converted trade secrets established as of "October 1984"); *Shaw's D.B. & L., Inc.*, 580 S.W.2d at 96 (market value of silverware converted on August 30, 1974 established in "August 1974" by reference to 1974 price guide); *Taylor v. Gossett*, 269 S.W. 230, 231 (Tex.Civ.App.— Dallas 1925, writ dism'd) (evidence of market

---

**2.** We distinguish *Ara v. Rutland*, 215 S.W. 445 (Tex. Comm'n App.—1919, holding approved), on the same basis as did the court in *Sherwin– Williams Co. v. Delahoussaye*, 124 S.W.2d 870, 874 (Tex.Civ.App.—Fort Worth 1939, no writ). The court in *Ara* had held that it could not, in that case, infer that the testimony reflected market value in Victoria, Texas. *Ara*, 215 S.W. at 446. It appears that in *Ara* there was no evidence from which to infer the area within which market value was established.

value of garage year before fire relevant in determining market value of garage immediately before fire). Similarly, here, the evidence does not indicate that prices on May 23, 1987 would have differed from prices throughout the year.[3] We conclude that Wulf's testimony is sufficient to establish the time of conversion.

## D. Other Arguments

■ Humes argues that Wulf's testimony does not establish that he knew the meaning of "market value." We disagree. Wulf testified that he had been buying and selling artifacts for ten years, first as a hobby and then as a part-time business. He estimated that he had bought approximately 600 points and sold the same number during that time. His testimony is sufficient to establish that he knew the concept of market value. *Bub Davis Packing Co. v. ABC Rendering Co. of San Antonio, Inc.*, 437 S.W.2d 634, 635 (Tex. Civ.App.—Austin 1969, no writ) (person in business of selling similar equipment for six years competent to testify regarding its value).

■ Humes' argument can also be read as protesting that counsel did not precisely define market value before she propounded questions regarding the market value of the artifacts to him. Market value is the amount that would be paid in cash by a willing buyer who desires to buy, but who is not required to buy, to a willing seller who desires to sell, but who does not need to sell. *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex. 1972). Wulf testified as to price for which a willing seller would have sold a particular artifact in 1987. The testimony is sufficient to show that Wulf was testifying about the market value of the artifacts.

■ Finally, Humes argues that Wulf's testimony is insufficient to support a verdict because Wulf was testifying as to sales prices rather than fair market value. Humes cites no authority for this argument, but she ap-

parently confuses the testimony in this case with testimony in cases in which market value is sought to be established exclusively with reference to a long-past historical sales price. Wulf testified as to the price for which the artifacts would have sold for in 1987; that testimony is sufficient to establish market value at the time of conversion.

For the above reasons, we hold that the evidence is legally sufficient to establish market value at the time and place of conversion. We overrule points of error two and four.

■ In points of error three, five and six, Humes challenges the factual sufficiency of the evidence to support the jury's award of actual damages for conversion. When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if the evidence is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Federal Deposit Ins. Corp. v. Golden Imports, Inc.*, 859 S.W.2d 635, 640 (Tex.App.—Houston [1st Dist.] 1993, no writ). *See generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515 (1991).

■ Here, Humes did not offer any evidence to contradict Hallmark's evidence of the market value of the property. Hallmark's evidence regarding the value of the artifacts is probative and is sufficient to sustain the jury verdict. Having already held that the Hallmark's evidence is legally sufficient to support the verdict, we hold that the evidence is not so weak as to be clearly wrong and manifestly unjust. We overrule points of error three, five and six.

---

3. Further, since the jury found the conversion was wilful, Humes would be liable for the highest price between the date of conversion, May 23, 1987, and the time of filing suit, January 15, 1988. *See Cochran v. Wool Growers Cent. Storage Co.*, 140 Tex. 184, 166 S.W.2d 904, 907 (1942);

*DeShazo v. Wool Growers Cent. Storage Co.*, 139 Tex. 143, 162 S.W.2d 401, 404 (1942). We are then concerned with the period from January 1, 1987 to May 23, 1987. There is no evidence that the price would have changed in that five-month period.

## CONCLUSION

We conclude from Wulf's testimony regarding the value of the artifacts that the evidence is sufficient to support the verdict so we do not address Humes' arguments regarding Hallmark's testimony as to the value of his household belongings and tools of trade. Further, since the testimony established actual damages, the award of attorney's fees and punitive damages is appropriate. The judgment of the trial court is affirmed.