

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-250-CV

ROBERT MORRISON, II                                                   APPELLANT

V.

GREG STANDERFER                                                 APPELLEE

------------

## FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury found that Appellant Robert Morrison, II converted an airplane belonging to Appellee Greg Standerfer and awarded actual damages of $10,000 and punitive damages of $15,000. The trial court granted Standerfer's motion for judgment notwithstanding the verdict ("JNOV") on the jury's damages finding and entered final judgment awarding him $62,000 in actual damages

---

[1] ... *See* Tex. R. App. P. 47.4.

and $15,000 in punitive damages. Morrison now appeals. In four issues, he argues that (1) he disproved an essential element of Standerfer's conversion claim, and therefore the trial court erred by rendering judgment for Standefer on that claim; (2) the trial court erred by basing its judgment on the statutory landlord's lien, if the trial court in fact did so; (3) the trial court erred by disregarding the jury's finding of $10,000 in actual damages; and (4) the trial court erred by submitting the wrong definition of malice in the jury charge, but even under the wrong definition, the evidence was legally insufficient to support the jury's finding of malice.[2] Because we hold that the trial court did not err by entering judgment for Standerfer on his conversion claim or by entering a JNOV on the jury's finding of damages and that Morrison failed to preserve his complaint about the jury charge's question on malice, we affirm.

Background Facts and Procedural History

Morrison owns an airplane hangar in Roanoke, Texas. Ray Sanino, who owns a flight school, signed a lease with Morrison to rent the hangar. The lease provides that "[a]s additional security . . . [Sanino] grants [Morrison] a security interest in all property, personal or otherwise, of or under the control of [Sanino] which is or becomes situated on or in the said leased premises."

---

[2] Morrison originally raised five issues, but he withdrew his fifth issue in his reply brief.

2

Standerfer had a "gentleman's agreement" with Sanino that Sanino would pay for legal work performed by Standerfer by storing Standerfer's two planes, a Diamond aircraft and a Commander aircraft. Standerfer's understanding was that the planes would be stored in the hangar from which Sanino operated his flight school, which was not the hangar that Sanino had rented from Morrison. But in 2007, Standerfer's planes were moved to the leased hangar space. Although Standerfer testified that he did not know who moved his planes, he also testified that Sanino had told him that "he probably had someone move it in there, but he didn't remember exactly" and that Sanino "took my plane from the hangar in which I stored it . . . and took it over there" to Morrison's hangar.

On September 12, 2007, after Sanino defaulted on the lease, Morrison locked the hangar door. On September 13, Standerfer entered the premises, cut the chain locking the hangar door, and removed the Diamond, leaving his Commander aircraft behind. When Standerfer returned to remove his Commander airplane, he found on the door a note signed with Morrison's initials that said, "If you open this door OR remove these aircraft before I say it's o.k., I will be courteous enough to visit you in JAIL." This note was not addressed to any specific person. The hangar also held aircraft owned by someone other than Standerfer or Sanino.

3

Standerfer wrote a letter to Morrison on Sanino's behalf, terminating the lease. He included with the letter a copy of a bank check for $2,000 and an offer to give Morrison the check to pay the August and September rent. On September 17, Standerfer sent Morrison another letter offering to submit a bond for $8,000 to secure Sanino's payment for the rent for the remaining portion of the lease term in exchange for Morrison's releasing the Commander. Morrison declined Standerfer's offer.

Morrison sued Sanino, Standerfer, and the owner of the other plane for a temporary restraining order (which was granted) and a temporary injunction to prevent them from entering the premises until Sanino's rent had been paid. Standerfer and Sanino countersued for conversion, seeking actual and punitive damages. Morrison supplemented his petition to allege a breach of contract claim against Sanino and a quasi-contractual claim against Standerfer. On Standerfer's motion, the trial court entered a partial summary judgment finding that Standerfer's plane had a fair market value on the date of the lockout of $62,000 and that no contractual lien existed between Standerfer and Morrison.

The claims proceeded to trial, and the jury awarded Morrison $8,500 on his breach of contract claim against Sanino. The jury also found that Morrison had converted Standerfer's plane and awarded Standerfer $10,000 in actual damages plus $15,000 in punitive damages.

4

The trial court granted Standerfer's motion for JNOV on the jury's finding of $10,000 in actual damages on his conversion claim and entered a final judgment awarding Standerfer $62,000 in actual damages and $15,000 in punitive damages.

## Analysis

In his first issue, Morrison argues that the trial court erred by entering judgment for Standerfer on his conversion claim because Morrison disproved an essential element of conversion. He argues that the contractual lien contained in his lease with Sanino gave him the lawful right to possess all property under Sanino's control that was situated in the hangar at the time he defaulted on the lease and that Standerfer's planes were under Sanino's control when Sanino drove them into Morrison's hangar.

In reply, Standerfer argues that "Texas law is well settled that Sanino . . . had no power to grant a contractual lien" on Standerfer's property. The cases cited by Standerfer are not authoritative and do not establish well-settled Texas law on contractual liens like the one involved here.[3]

---

[3] _See Rohweder v. Aberdeen Prod. Credit Ass'n_, 765 F.2d 109, 112 (8th Cir. 1985); _Standard Foundry v. Ebner_, 206 B.R. 475, 478–79 (Bankr. N.D. Ill. 1997); _Ayers v. Greater Houston Pipe_, No. 01-98-01022-CV, 2000 WL 1678443, at *2 (Tex. App.—Houston [1st Dist.] Nov. 9, 2000, no pet.) (not designated for pub.).

5

Nevertheless, Standerfer is correct that Texas law generally does not permit two parties to agree to place a lien on the property of a third party who does not consent to the lien.[4] An agreement purporting to do so does not create a valid, enforceable lien against the third party's property.[5]

The Houston Fourteenth Court of Appeals has addressed contractual liens on personal property in a similar situation, although the contractual language in that case differed from the language in the lease here.[6] In *BML Stage Lighting*,

---

[4] *... BML Stage Lighting, Inc. v. Mayflower Transit, Inc.*, 14 S.W.3d 395, 400 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding that contract between freight transport company and shipper of goods could not create a lien on the goods that the shipper did not own and had only leased when the owner of the goods was not a party to the contract for carriage); *see also Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 805 (Tex. 1978) (stating that a mechanic's and materialman's lien attaches to the interest of the person contracting for construction and if a lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the lessor); *Tex. State Bank v. Foremost Ins. Co.*, 477 S.W.2d 652, 654 (Tex. Civ. App.—Corpus Christi 1972, writ ref'd n.r.e.) (stating that no one can give a valid security interest in a mobile home unless he has rights in it); *Cullum v. Lub-Tex Motor Co.*, 267 S.W. 322, 324 (Tex. Civ. App.—Amarillo 1924, no writ) ("The general rule is that when the mortgagor does not own the property, or such an interest therein as the law will recognize, an attempted mortgage given by him is void and creates no lien in favor of the mortgagee"); *Williams v. King*, 206 S.W. 106, 107 (Tex. Civ. App.—Austin 1917, no writ) (op. on reh'g) ("One cannot mortgage that which he does not own, so as to create a lien thereon prior to his becoming such owner.").

[5] *... See Cullum*, 267 S.W. at 324.

[6] *... BML*, 14 S.W.3d at 400.

6

BML leased equipment to SportsLab, Inc.[7]  SportsLab contracted with Mayflower Transit, Inc. to transport the equipment around the country for a touring exhibition.[8]  The contract between SportsLab and Mayflower contained a provision stating that "if shipper fails or refuses to pay lawfully applicable charges . . . carrier may sell the property at its option."[9]  After SportsLab failed to pay its transport bill, Mayflower retained possession of the equipment.[10] BML sought the return of its property, but Mayflower refused to turn over the equipment until its bill was paid.[11]  Mayflower contended that it could assert a contractual lien on the property of BML, who was not a party to the contract between SportsLab and Mayflower.[12]  The court of appeals disagreed with Mayflower, stating that a contract generally binds no one except the parties to the contract and that when an owner of goods is not a party to a contract for

---

[7] ... *Id.* at 398.

[8] ... *Id.*

[9] ... *Id.* at 400.

[10] ... *Id.* at 398.

[11] ... *Id.*

[12] ... *Id.* at 400.

7

carriage and is not the shipper, the carrier cannot enforce a contractual lien against the goods.[13]

Similarly, Standerfer was not a party to the lease between Morrison and Sanino, and there was no evidence that Sanino had an ownership interest in Standefer's plane or that Standerfer consented to be bound by the terms of the lease. Consequently, Morrison and Sanino could not by contract place a valid lien on Standerfer's property. We hold that the lease did not create a valid, enforceable lien against Standerfer's property. Morrison makes no other argument against the jury's finding of conversion, and, accordingly, we overrule Morrison's first issue.

In his second issue, Morrison argues that if the trial court's failure to enforce his contractual lien was based on its application of the property code provisions regarding landlord liens that Standerfer relied on at trial, the trial court erred because Texas Property Code section 51.001 specifically exempts Morrison's lien from the statutory requirements. Morrison asserts that no statutory lien provisions apply because this is a contractual lien case, not a statutory lien case. Because we have held that the contractual lien in the lease

---

[13] ... *Id.*

8

between Morrison and Sanino did not apply to Standerfer's property, we overrule Morrison's second issue.

In his third issue, Morrison contends that if Standerfer was entitled to a judgment for conversion, the trial court erred by disregarding the jury's finding of $10,000 in damages because some evidence supports it. In response, Standerfer argues that he was entitled to elect the measure of damages that afforded him the greatest relief, and he could therefore elect the trial court's finding of fair market value over the jury's finding on damages.

A trial court may disregard a jury verdict and render judgment notwithstanding the verdict ("JNOV") if no evidence supports the jury findings on an issue necessary to liability or if a directed verdict would have been proper.[14] A trial court cannot disregard a jury's answer and enter a JNOV because the answer is against the great weight and preponderance of the evidence.[15] In such a situation, the trial court may only grant a new trial.[16] To

---

[14] *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex. 1991).

[15] *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 594 (Tex. 1986); *Duncan Land & Exploration, Inc., v. Littlepage*, 984 S.W.2d 318, 325 (Tex. App.—Fort Worth 1998, pet. denied).

[16] *Alm,* 717 S.W.2d at 594; *see also* Tex. R. Civ. P. 301 (providing that court may disregard jury finding that has *no* evidentiary support).

determine whether the trial court erred by rendering a JNOV, we view the evidence in the light most favorable to the verdict under the standards that govern legal sufficiency review.[17]

A plaintiff must elect the recovery he wants when the jury verdict contains more than one acceptable measure of damages.[18] And in a conversion case, a plaintiff generally may elect one of two measures of damages: loss of use damages, if the plaintiff seeks return of the property, and fair market value damages, if the plaintiff does not seek return of the property.[19] In other words, the plaintiff may be made whole by having his property returned to him, with compensation for any loss he sustained because he did not have the use of his property, or he may be made whole by essentially selling the property to the person who has converted his property, with a price set at the property's fair market value. The damages awarded should compensate the plaintiff for actual losses sustained as a natural and proximate result of the defendant's conversion

---

[17] *...* *See Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003).

[18] *...* *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987) (holding that a prevailing party may elect between alternative measures of damages, and should the party fail to do so, the court should use the finding affording the greater recovery and render judgment accordingly); *Kish v. Van Note*, 692 S.W.2d 463, 466–67 (Tex. 1985).

[19] *...* *Sibley v. Fitch*, 226 S.W.2d 885, 885 (Tex. Civ. App.—Waco 1950, writ ref'd).

and should not unjustly enrich the plaintiff.[20]

Here, Standefer did not make a choice between these two measures of conversion damages. Standerfer did ask the trial court to determine the fair market value of the plane, and it did so. But the jury was not asked to determine loss of use damages, the other usual measure of conversion damages. Instead, the jury was asked a general damages question. Specifically, the charge asked, "What sum of money, if any, if paid now in cash, would fairly and adequately compensate [Standerfer] for the damages, if any proximately caused by" Morrison's conversion? The charge then stated, "You are instructed that the fair market value of the plane is $62,000. This includes the fair market value of the property at the time and place of the conversion." Standerfer did not object to this question, either to its submission or to its wording.

Because Standerfer did not object to the damages question in the charge, Morrison argues that Standerfer is bound by it and could not elect an award of the plane's fair market value and that the trial court could not set aside the

---

[20] *… Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 889 (Tex. App.—Dallas 2009, no pet.); *see also Minter v. Sparks*, 246 S.W.2d 954, 957 (Tex. Civ. App.—Dallas 1951, writ ref'd n.r.e.) (stating that in determining damages, "[n]o absolutely rigid rule [applies] to every state of facts in conversion cases").

jury's verdict because some evidence supported it. We disagree. Even under the standard of review urged by Morrison, we cannot say that the trial court erred because no evidence supports any measure of damages in Standerfer's favor other than fair market value.

Morrison is correct that because Standerfer did not object to the charge, we measure the sufficiency of the evidence against the charge as actually submitted, rather than the charge that should have been submitted.[21] That is, we determine whether any evidence supports a finding that Standerfer suffered damages of $10,000. Under the charge, the jury could have based its finding on evidence that showed any damages, not just fair market value or loss of use damages. For example, Standerfer testified that the tires on the plane would have to be replaced. Assuming that Standerfer would have his plane returned

---

[21] *... See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.) (holding that when no objection is made to the charge, sufficiency of the evidence is measured against the charge submitted and not against the charge that should have been submitted), *cert. denied*, 530 U.S. 1244 (2000); *Burlington N. R.R. Co. v. Gen. Projection Sys., Inc.*, No. 05-97-00425-CV, 2000 WL 1100874, at *8 (Tex. App.—Dallas Aug. 8, 2000, pet. denied) (op. on reh'g) (not designated for publication) (holding that when the jury was not asked to determine the fair market value of the plaintiff's property at the time of conversion and was only asked what sum of money would fairly and reasonably compensate the plaintiff for its damages caused by the conversion, and when the plaintiff did not argue on appeal that the trial court erred by refusing to submit the issue of fair market value, the court measured the sufficiency of the evidence against the defective issue actually submitted).

to him—and nothing at trial told the jury that this would not be the case—the jury could have awarded him damages for the cost of replacing the tires had any evidence of such cost been presented. But no such evidence appears in the record. Likewise, there is no evidence of loss of use damages, such as evidence that Standerfer had to buy a plane ticket because he did not have access to his plane. There was some evidence that Standerfer had lost a sale of the plane because of Morrison's continued possession of it, but no evidence of what damages, if any, Standerfer sustained from the loss of the sale.

The only evidence of a dollar amount of any kind regarding Standerfer's damages was evidence of the value of the plane. Standerfer testified that the plane was worth $62,000, and the instruction to the jury informed it that the plane had that value. But the jury was not instructed to find fair market value as its answer to the damages question, and no indication was given to the jury that Standerfer would not regain possession of his plane, which is the only circumstance in which he would be entitled to fair market value as damages. Standerfer did testify that he had put his Diamond aircraft up for sale because he "[did not] fly enough to have a plane for my own." But this testimony did not tell the jury that he did not want his Commander aircraft returned to him. In Standerfer's closing arguments, he stated,

13

> The Court has instructed you what the damage is. You're instructed that the fair market value of the plane is $62,000 . . . . The damages that would fairly and adequately compensate me for any damages proximately caused by the conversion by [Morrison], that should be filled in $62,000. You have been instructed that is the fair market value of the item taken.

But although this language tells the jury that Standerfer wanted the jury to award him the fair market value of the plane as damages, the charge did not instruct the jury that it was required to do so, and Standerfer did not inform the jury that he wanted money in lieu of, rather than in addition to, the return of the plane. The jury had no indication from the court or the evidence that its damages finding should be based on the value of the plane. In fact, because there was no instruction that it should find the market value of the plane, there was no evidence to support the jury's finding that Standerfer had been damaged at all for any specific amount.

Morrison argues that there was some evidence to support the $10,000 finding, but all the evidence he points out relates to the amount of money that he claimed that he was owed on the lease and that Standerfer had offered to pay in exchange for the return of his plane. None of the evidence noted by Morrison supports the jury's finding that Standerfer suffered damages of $10,000. The trial court therefore did not err by disregarding the jury's answer and allowing Standerfer to elect as conversion damages the plane's fair market

14

value, which the trial court had already determined, and which the evidence supported.[22]

Morrison notes that the trial court's finding was for value as of the day of the lockout, which was two days before the date of conversion (when Morrison refused to return the plane upon Standerfer's demand), but nothing in the record indicates that the value of aircraft fluctuates rapidly or changes day by day,[23] and Morrison does not challenge the trial court's finding of fair market value on appeal. We overrule Morrison's third issue. We note that after payment to Standerfer of $62,000, the plane's fair market value, Morrison is entitled to title to the plane, just as if he had purchased the plane from Standerfer.[24]

---

[22] *See Ryno v. Tyra*, 752 S.W.2d 148, 150 (Tex. App.—Fort Worth 1988, writ denied) (stating that in a claim for conversion of an automobile, "in the absence of any contest of the automobile's value, it was unnecessary for the trial court to submit an issue on compensatory damages").

[23] *See Humes v. Hallmark*, 895 S.W.2d 475, 479–80 (Tex. App.—Austin 1995, no writ) (noting that value of stocks or commodities, property subject to a rapidly changing market, may need to be established within days or weeks of the conversion but that the time to measure the value of an artifact, the value of which is not subject to the same kind of market flux, does not need to be so compressed).

[24] *See Sibley*, 226 S.W.2d at 886 (noting that when the defendant had satisfied the money judgment against him on the plaintiff's conversion claim, the plaintiff would "thereby become conclusively estopped from asserting any further right, title[,] or interest in or to the property in controversy").

In his fourth issue, Morrison argues that the trial court erred by submitting the wrong definition of "malice" to the jury, but that even under the definition submitted, there was legally insufficient evidence to support the jury's finding of malice. Morrison did not, however, preserve this issue for appeal.

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.[25] If a party fails to do this, error is not preserved, and the complaint is waived.[26]

A specific objection is one that enables the trial court to understand the precise grounds so as to make an informed ruling and that affords the offering party an opportunity to remedy any defect, if possible.[27] It must "clearly and distinctly" make the trial court aware of the party's complaint.[28] Both the

---

[25] Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1).

[26] *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

[27] *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1); *Campbell v. State*, 85 S.W.3d 176, 185 (Tex. 2002); *McDaniel v. Yarbrough*, 898 S.W.2d 251, 252 (Tex. 1995).

[28] *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007).

objection and the ruling must be included in the appellate record.[29]  The complaint on appeal must be the same as that presented in the trial court.[30]

The trial court held an informal charge conference off the record.  The court then gave the charge to the jury and, while the jury was deliberating, held a formal charge conference for the purpose of allowing the parties to make their objections on the record.  At the formal charge conference, Morrison objected to the malice question, stating, "We objected to Question No. 7, that malice — the instruction of malice being included, that instruction."  In response, the trial court stated, "And I'll say as it pertains to 7, that objection is preserved."  Thus, the record shows that Morrison made some objection to the question, and the trial court appeared to have understood Morrison's objection.  But the record is not clear exactly what the objection was, and we cannot determine whether the objection in the trial court is the same objection that Morrison raises on appeal.  Because we cannot determine whether the objection made to the trial court was the same objection that he now makes on appeal, Morrison has not preserved his complaint with respect to the definition submitted to the jury.[31]

---

[29] Tex. R. App. P. 33.1(a).

[30] *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997).

[31] *See* Tex. R. App. P. 33.1(a).

Morrison further argues that even under the definition submitted, there was legally insufficient evidence to support the jury's finding of malice.  In a jury trial, a challenge to the legal sufficiency of the evidence must be preserved through one of the following procedural steps in the trial court:

(1)     a motion for instructed verdict;

(2)     a motion for judgment notwithstanding the verdict;

(3)     an objection to the submission of the question to the jury;

(4)     a motion to disregard the jury's answer to a vital fact question; or

(5)     a motion for new trial.[32]

Morrison did not file a motion for instructed verdict.  He did file a motion for JNOV, but he did not make any argument in the motion about the jury's finding on malice.  Morrison objected to the malice instruction, but the record does not indicate that he asserted in the trial court that no question on malice should be submitted to the jury, and the record does not indicate what his specific objection to the malice definition was.  Morrison did not file a motion to disregard the jury's answer to the malice finding.  He filed a motion for new trial, but this motion also did not include any argument regarding the malice finding.  Morrison thus did not preserve his complaint regarding the legal

---

[32] ... *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220–21 (Tex. 1992); *see also* Tex. R. Civ. P. 324(b) (listing appellate complaints that must be preserved by a motion for new trial).

sufficiency of the evidence supporting the jury's finding of malice, and, accordingly, we overrule Morrison's fourth issue.

### Standerfer's Cross-Point

Standerfer brings one cross-point, arguing that Morrison's appeal is frivolous and requesting this court to award him an additional 10% of the judgment amount as sanctions. This court may award damages to a prevailing party if it determines that an appeal is frivolous.[33] Whether to do so is within this court's discretion, but sanctions should be imposed only in egregious circumstances.[34] We do not believe this case warrants the award of sanctions, and we therefore overrule Standerfer's cross-point.

### Conclusion

Having overruled Morrison's four issues and Standerfer's sole cross-point, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED: March 25, 2010

---

[33] Tex. R. App. P. 45; *Clopton v. Pak*, 66 S.W.3d 513, 517 (Tex. App.—Fort Worth 2001, pet. denied).

[34] *Clopton*, 66 S.W.3d at 517; *Durham v. Zarcades*, 270 S.W.3d 708, 720 (Tex. App.—Fort Worth 2008, no pet.).