COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO. 2-09-250-CV

 

 

ROBERT MORRISON, II                                                         APPELLANT

 

                                                   V.

 

GREG STANDERFER                                                               APPELLEE

 

                                              ------------

 

          FROM COUNTY COURT AT LAW
NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury found that Appellant Robert Morrison, II
converted an airplane belonging to Appellee Greg Standerfer and awarded actual
damages of $10,000 and punitive damages of $15,000.  The trial court granted Standerfer=s motion for judgment notwithstanding the verdict
(AJNOV@) on the jury=s damages finding and entered final judgment
awarding him $62,000 in actual damages and $15,000 in punitive damages.  Morrison now appeals.  In four issues, he argues that (1) he
disproved an essential element of Standerfer=s conversion claim, and therefore the trial court
erred by rendering judgment for Standefer on that claim; (2) the trial court
erred by basing its judgment on the statutory landlord=s lien, if the trial court in fact did so; (3)
the trial court erred by disregarding the jury=s finding of $10,000 in actual damages; and (4)
the trial court erred by submitting the wrong definition of malice in the jury
charge, but even under the wrong definition, the evidence was legally
insufficient to support the jury=s finding of malice.[2]  Because we hold that the trial court did not
err by entering judgment for Standerfer on his conversion claim or by entering
a JNOV on the jury=s
finding of damages and that Morrison failed to preserve his complaint about the
jury charge=s
question on malice, we affirm.

Background
Facts and Procedural History

Morrison owns an airplane hangar in Roanoke,
Texas.  Ray Sanino, who owns a flight
school, signed a lease with Morrison to rent the hangar.  The lease provides that A[a]s additional security . . . [Sanino] grants
[Morrison] a security interest in all property, personal or otherwise, of or
under the control of [Sanino] which is or becomes situated on or in the said
leased premises.@








Standerfer had a Agentleman=s agreement@ with Sanino that Sanino would pay for legal work
performed by Standerfer by storing Standerfer=s two planes, a Diamond aircraft and a Commander
aircraft.  Standerfer=s understanding was that the planes would be
stored in the hangar from which Sanino operated his flight school, which was
not the hangar that Sanino had rented from Morrison.  But in 2007, Standerfer=s planes were moved to the leased hangar
space.  Although Standerfer testified
that he did not know who moved his planes, he also testified that Sanino had
told him that Ahe
probably had someone move it in there, but he didn=t remember exactly@ and that Sanino Atook my plane from the hangar in which I stored
it . . . and took it over there@ to Morrison=s hangar.

On September 12, 2007, after Sanino defaulted on
the lease, Morrison locked the hangar door. 
On September 13, Standerfer entered the premises, cut the chain locking
the hangar door, and removed the Diamond, leaving his Commander aircraft
behind.  When Standerfer returned to
remove his Commander airplane, he found on the door a note signed with Morrison=s initials that said, AIf you open this door OR remove these aircraft
before I say it=s
o.k., I will be courteous enough to visit you in JAIL.@  This note
was not addressed to any specific person. 
The hangar also held aircraft owned by someone other than Standerfer or
Sanino.








Standerfer wrote a letter to Morrison on Sanino=s behalf, terminating the lease.  He included with the letter a copy of a bank
check for $2,000 and an offer to give Morrison the check to pay the August and
September rent.  On September 17,
Standerfer sent Morrison another letter offering to submit a bond for $8,000 to
secure Sanino=s
payment for the rent for the remaining portion of the lease term in exchange
for Morrison=s
releasing the Commander.  Morrison
declined Standerfer=s
offer.

Morrison sued Sanino, Standerfer, and the owner
of the other plane for a temporary restraining order (which was granted) and a
temporary injunction to prevent them from entering the premises until Sanino=s rent had been paid.  Standerfer and Sanino countersued for
conversion, seeking actual and punitive damages.  Morrison supplemented his petition to allege
a breach of contract claim against Sanino and a quasi-contractual claim against
Standerfer.  On Standerfer=s motion, the trial court entered a partial
summary judgment finding that Standerfer=s plane had a fair market value on the date of
the lockout of $62,000 and that no contractual lien existed between Standerfer
and Morrison.

The claims proceeded to trial, and the jury
awarded Morrison $8,500 on his breach of contract claim against Sanino.  The jury also found that Morrison had
converted Standerfer=s
plane and awarded Standerfer $10,000 in actual damages plus $15,000 in punitive
damages.








The trial court granted Standerfer=s motion for JNOV on the jury=s finding of $10,000 in actual damages on his
conversion claim and entered a final judgment awarding Standerfer $62,000 in
actual damages and $15,000 in punitive damages.

Analysis

In his first issue, Morrison argues that the
trial court erred by entering judgment for Standerfer on his conversion claim
because Morrison disproved an essential element of conversion.  He argues that the contractual lien contained
in his lease with Sanino gave him the lawful right to possess all property
under Sanino=s
control that was situated in the hangar at the time he defaulted on the lease
and that Standerfer=s
planes were under Sanino=s
control when Sanino drove them into Morrison=s hangar.








In reply, Standerfer argues that ATexas law is well settled that
Sanino . . . had no power to grant a contractual lien@ on Standerfer=s property. 
The cases cited by Standerfer are not authoritative and do not establish
well-settled Texas law on contractual liens like the one involved here.[3]  Nevertheless, Standerfer is correct that
Texas law generally does not permit two parties to agree to place a lien on the
property of a third party who does not consent to the lien.[4]  An agreement purporting to do so does not
create a valid, enforceable lien against the third party=s property.[5]














The Houston Fourteenth Court of Appeals has
addressed contractual liens on personal property in a similar situation, although
the contractual language in that case differed from the language in the lease
here.[6]  In BML Stage Lighting, BML leased
equipment to SportsLab, Inc.[7]  SportsLab contracted with Mayflower Transit,
Inc. to transport the equipment around the country for a touring exhibition.[8]  The contract between SportsLab and Mayflower
contained a provision stating that Aif shipper fails or refuses to pay lawfully
applicable charges . . . carrier may sell the property at its option.@[9]  After
SportsLab failed to pay its transport bill, Mayflower retained possession of
the equipment.[10]  BML sought the return of its property, but
Mayflower refused to turn over the equipment until its bill was paid.[11]  Mayflower contended that it could assert a
contractual lien on the property of BML, who was not a party to the contract
between SportsLab and Mayflower.[12]  The court of appeals disagreed with
Mayflower, stating that a contract generally binds no one except the parties to
the contract and that when an owner of goods is not a party to a contract for
carriage and is not the shipper, the carrier cannot enforce a contractual lien
against the goods.[13]

Similarly, Standerfer was not a party to the
lease between Morrison and Sanino, and there was no evidence that Sanino had an
ownership interest in Standefer=s plane or that Standerfer consented to be bound
by the terms of the lease.  Consequently,
Morrison and Sanino could not by contract place a valid lien on Standerfer=s property. 
We hold that the lease did not create a valid,  enforceable lien against Standerfer=s property. 
Morrison makes no other argument against the jury=s finding of conversion, and, accordingly, we
overrule Morrison=s
first issue.








In his second issue, Morrison argues that if the
trial court=s
failure to enforce his contractual lien was based on its application of the
property code provisions regarding landlord liens that Standerfer relied on at
trial, the trial court erred because Texas Property Code section 51.001
specifically exempts Morrison=s lien from the statutory requirements.  Morrison asserts that no statutory lien
provisions apply because this is a contractual lien case, not a statutory lien
case.  Because we have held that the
contractual lien in the lease between Morrison and Sanino did not apply to Standerfer=s property, we overrule Morrison=s second issue.

In his third issue, Morrison contends that if
Standerfer was entitled to a judgment for conversion, the trial court erred by
disregarding the jury=s
finding of $10,000 in damages because some evidence supports it.  In response, Standerfer argues that he was
entitled to elect the measure of damages that afforded him the greatest relief,
and he could therefore elect the trial court=s finding of fair market value over the jury=s finding on damages.








A trial court may disregard a jury verdict and
render judgment notwithstanding the verdict (AJNOV@) if no evidence supports the jury findings on an
issue necessary to liability or if a directed verdict would have been proper.[14]  A trial court cannot disregard a jury=s answer and enter a JNOV because the answer is
against the great weight and preponderance of the evidence.[15]  In such a situation, the trial court may only
grant a new trial.[16]  To determine whether the trial court erred by
rendering a JNOV, we view the evidence in the light most favorable to the
verdict under the standards that govern legal sufficiency review.[17]








A
plaintiff must elect the recovery he wants when the jury verdict contains more
than one acceptable measure of damages.[18]  And in a conversion case, a plaintiff generally
may elect one of two measures of damages: loss of use damages, if the plaintiff
seeks return of the property, and fair market value damages, if the plaintiff
does not seek return of the property.[19]  In other words, the plaintiff may be made
whole by having his property returned to him, with compensation for any loss he
sustained because he did not have the use of his property, or he may be made
whole by essentially selling the property to the person who has converted his
property, with a price set at the property=s fair market value.  The damages awarded should compensate the
plaintiff for actual losses sustained as a natural and proximate result of the
defendant=s
conversion and should not unjustly enrich the plaintiff.[20]  

Here,
Standefer did not make a choice between these two measures of conversion
damages.  Standerfer did ask the trial
court to determine the fair market value of the plane, and it did so.  But the jury was not asked to determine loss
of use damages, the other usual measure of conversion damages.  Instead, the jury was asked a general damages
question.  Specifically, the charge
asked, AWhat sum of money, if any, if paid now in cash,
would fairly and adequately compensate [Standerfer] for the damages, if any
proximately caused by@
Morrison=s conversion? 
The charge then stated, AYou are instructed that the fair market value of
the plane is $62,000.  This includes the
fair market value of the property at the time and place of the conversion.@ 
Standerfer did not object to this question, either to its submission or
to its wording.  

Because
Standerfer did not object to the damages question in the charge, 








Morrison argues that
Standerfer is bound by it and could not elect an award of the plane=s fair market value and that the trial court
could not set aside the jury=s verdict because some evidence supported
it.  We disagree.  Even under the standard of review urged by
Morrison, we cannot say that the trial court erred because no evidence supports
any measure of damages in Standerfer=s favor other than fair market value.  








Morrison is correct that because Standerfer did
not object to the charge, we measure the sufficiency of the evidence against
the charge as actually submitted, rather than the charge that should have been
submitted.[21]  That is, we determine whether any evidence
supports a finding that Standerfer suffered damages of $10,000.  Under the charge, the jury could have based
its finding on evidence that showed any damages, not just fair market value or
loss of use damages.  For example,
Standerfer testified that the tires on the plane would have to be
replaced.  Assuming that Standerfer would
have his plane returned to himCand nothing at trial told the jury that this
would not be the caseCthe
jury could have awarded him damages for the cost of replacing the tires had any
evidence of such cost been presented. 
But no such evidence appears in the record.  Likewise, there is no evidence of loss of use
damages, such as evidence that Standerfer had to buy a plane ticket because he
did not have access to his plane.  There
was some evidence that Standerfer had lost a sale of the plane because of
Morrison=s continued possession of it, but no evidence of
what damages, if any, Standerfer sustained from the loss of the sale.

The only evidence of a dollar amount of any kind
regarding Standerfer=s
damages was evidence of the value of the plane. 
Standerfer testified that the plane was worth $62,000, and the
instruction to the jury informed it that the plane had that value.  But the jury was not instructed to find fair
market value as its answer to the damages question, and no indication was given
to the jury that Standerfer would not regain possession of his plane, which is
the only circumstance in which he would be entitled to fair market value as
damages.  Standerfer did testify that he
had put his Diamond aircraft up for sale because he A[did not] fly enough to have a plane for my own.@  But this
testimony did not tell the jury that he did not want his Commander aircraft returned
to him.  In Standerfer=s closing arguments, he stated, 








The Court has instructed you what the damage
is.  You=re instructed that the fair market value of the plane is $62,000 . . .
.  The damages that would fairly and
adequately compensate me for any damages proximately caused by the conversion
by [Morrison], that should be filled in $62,000.  You have been instructed that is the fair
market value of the item taken.

 

But
although this language tells the jury that Standerfer wanted the jury to award
him the fair market value of the plane as damages, the charge did not instruct
the jury that it was required to do so, and Standerfer did not inform the jury
that he wanted money in lieu of, rather than in addition to, the return of the
plane.  The jury had no indication from
the court or the evidence that its damages finding should be based on the value
of the plane.  In fact, because there was
no instruction that it should find the market value of the plane, there was no
evidence to support the jury=s finding that Standerfer had been damaged at all
for any specific amount.








Morrison argues that there was some evidence to
support the $10,000 finding, but all the evidence he points out relates to the
amount of money that he claimed that he was owed on the lease and that
Standerfer had offered to pay in exchange for the return of his plane.  None of the evidence noted by Morrison
supports the jury=s
finding that Standerfer suffered damages of $10,000.  The trial court therefore did not err by
disregarding the jury=s
answer and allowing Standerfer to elect as conversion damages the plane=s fair market value, which the trial court had
already determined, and which the evidence supported.[22]


Morrison notes that the trial court=s finding was for value as of the day of the
lockout, which was two days before the date of conversion (when Morrison
refused to return the plane upon Standerfer=s demand), but nothing in the record indicates
that the value of aircraft fluctuates rapidly or changes day by day,[23]
and Morrison does not challenge the trial court=s finding of fair market value on appeal.  We overrule Morrison=s third issue. 
We note that after payment to Standerfer of $62,000, the plane=s fair market value, Morrison is entitled to
title to the plane, just as if he had purchased the plane from Standerfer.[24]








In his fourth issue, Morrison argues that the
trial court erred by submitting the wrong definition of Amalice@ to the jury, but that even under the definition
submitted, there was legally insufficient evidence to support the jury=s finding of malice.  Morrison did not, however, preserve this
issue for appeal.

To preserve a complaint for appellate review, a
party must have presented to the trial court a timely request, objection, or
motion that states the specific grounds for the desired ruling, if they are not
apparent from the context of the request, objection, or motion.[25]  If a party fails to do this, error is not
preserved, and the complaint is waived.[26]  








A specific objection is one that enables the
trial court to understand the precise grounds so as to make an informed ruling
and that affords the offering party an opportunity to remedy any defect, if
possible.[27]  It must Aclearly and distinctly@ make the trial court aware of the party=s complaint.[28]  Both the objection and the ruling must be
included in the appellate record.[29]  The complaint on appeal must be the same as
that presented in the trial court.[30]

The trial court held an informal charge
conference off the record.  The court
then gave the charge to the jury and, while the jury was deliberating, held a
formal charge conference for the purpose of allowing the parties to make their
objections on the record.  At the formal
charge conference, Morrison objected to the malice question, stating, AWe objected to Question No. 7, that malice C the instruction of malice being included, that
instruction.@  In response, the trial court stated, AAnd I=ll say as it pertains to 7, that objection is
preserved.@  Thus, the record shows that Morrison made
some objection to the question, and the trial court appeared to have understood
Morrison=s objection. 
But the record is not clear exactly what the objection was, and we
cannot determine whether the objection in the trial court is the same objection
that Morrison raises on appeal.  Because
we cannot determine whether the objection made to the trial court was the same
objection that he now makes on appeal, Morrison has not preserved his complaint
with respect to the definition submitted to the jury.[31]








Morrison further argues that even under the
definition submitted, there was legally insufficient evidence to support the
jury=s finding of malice.  In a jury trial, a challenge to the legal
sufficiency of the evidence must be preserved through one of the following
procedural steps in the trial court:

(1)    a
motion for instructed verdict;

(2)    a
motion for judgment notwithstanding the verdict;

(3)    an
objection to the submission of the question to the jury;

(4)    a
motion to disregard the jury=s answer to a vital fact question; or

(5)    a
motion for new trial.[32]








Morrison did not file a motion for instructed
verdict.  He did file a motion for JNOV,
but he did not make any argument in the motion about the jury=s finding on malice.  Morrison objected to the malice instruction,
but the record does not indicate that he asserted in the trial court that no
question on malice should be submitted to the jury, and the record does not
indicate what his specific objection to the malice definition was.  Morrison did not file a motion to disregard
the jury=s answer to the malice finding.  He filed a motion for new trial, but this
motion also did not include any argument regarding the malice finding.  Morrison thus did not preserve his complaint
regarding the legal sufficiency of the evidence supporting the jury=s finding of malice, and, accordingly, we
overrule Morrison=s
fourth issue.

Standerfer=s Cross-Point

Standerfer brings one cross-point, arguing that
Morrison=s appeal is frivolous and requesting this court
to award him an additional 10% of the judgment amount as sanctions.  This court may award damages to a prevailing
party if it determines that an appeal is frivolous.[33]  Whether to do so is within this court=s discretion, but sanctions should be imposed
only in egregious circumstances.[34]  We do not believe this case warrants the
award of sanctions, and we therefore overrule Standerfer=s cross-point.

Conclusion

Having overruled Morrison=s four issues and Standerfer=s sole cross-point, we affirm the trial court=s judgment.

 

 

LEE ANN
DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  March 25, 2010











[1]See Tex. R. App. P. 47.4.





[2]Morrison originally raised five issues, but he withdrew his fifth
issue in his reply brief.





[3]See Rohweder v. Aberdeen Prod. Credit
Ass'n, 765 F.2d 109, 112 (8th Cir. 1985); Standard Foundry v. Ebner,
206 B.R. 475, 478B79 (Bankr. N.D. Ill. 1997); Ayers v. Greater Houston Pipe, No.
01‑98‑01022‑CV, 2000 WL 1678443, at *2 (Tex. App.CHouston [1st Dist.] Nov. 9, 2000, no pet.) (not designated for pub.).





[4]BML Stage Lighting, Inc. v. Mayflower Transit, Inc., 14 S.W.3d 395, 400 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied) (holding that contract between freight transport
company and shipper of goods could not create a lien on the goods that the
shipper did not own and had only leased when the owner of the goods was not a
party to the contract for carriage); see also Diversified Mortgage
Investors v. Lloyd D. Blaylock Gen. Contractor, Inc., 576 S.W.2d 794, 805
(Tex. 1978) (stating that a mechanic=s and
materialman=s lien attaches to the interest of the person contracting for
construction and if a lessee contracts for construction, the mechanic=s lien attaches only to the leasehold interest, not to the fee
interest of the lessor); Tex. State Bank v. Foremost Ins. Co., 477
S.W.2d 652, 654 (Tex. Civ. App.CCorpus Christi
1972, writ ref=d n.r.e.) (stating that no one can give a valid security interest in a
mobile home unless he has rights in it); Cullum v. Lub‑Tex Motor Co.,
267 S.W. 322, 324 (Tex. Civ. App.CAmarillo 1924,
no writ) (AThe general rule is that when the mortgagor does not own the property,
or such an interest therein as the law will recognize, an attempted mortgage
given by him is void and creates no lien in favor of the mortgagee@); Williams v. King, 206 S.W. 106, 107 (Tex. Civ. App.CAustin 1917, no writ) (op. on reh=g) (AOne cannot mortgage that which he does not own, so as to create a lien
thereon prior to his becoming such owner.@).





[5]See Cullum, 267 S.W. at 324.





[6]BML, 14 S.W.3d at 400.





[7]Id. at 398.





[8]Id.





[9]Id. at 400.





[10]Id. at 398.





[11]Id.





[12]Id. at 400.





[13]Id.





[14]See Tex. R. Civ. P. 301; Tiller
v. McLure, 121 S.W.3d 709, 713 (Tex. 2003); Fort Bend County Drainage
Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991).





[15]Alm v. Aluminum Co. of Am., 717 S.W.2d
588, 594 (Tex. 1986); Duncan Land & Exploration, Inc., v. Littlepage,
984 S.W.2d 318, 325 (Tex. App.CFort Worth
1998, pet. denied).  





[16]Alm, 717 S.W.2d at 594; see also Tex. R. Civ. P. 301 (providing that court may
disregard jury finding that has no evidentiary support).





[17]See Wal-Mart Stores, Inc. v. Miller, 102
S.W.3d 706, 709 (Tex. 2003).





[18]Birchfield v. Texarkana Mem=l Hosp., 747 S.W.2d 361, 367 (Tex. 1987) (holding that a prevailing party may
elect between alternative measures of damages, and should the party fail to do
so, the court should use the finding affording the greater recovery and render
judgment accordingly); Kish v. Van Note, 692 S.W.2d 463, 466B67 (Tex. 1985). 





[19]Sibley v. Fitch, 226 S.W.2d 885, 885
(Tex. Civ. App.CWaco 1950, writ ref=d).





[20]Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd., 287 S.W.3d 877, 889 (Tex. App.CDallas 2009,
no pet.); see also Minter v. Sparks, 246 S.W.2d 954, 957 (Tex. Civ. App.CDallas 1951, writ ref=d n.r.e.)
(stating that in determining damages, A[n]o
absolutely rigid rule [applies] to every state of facts in conversion cases@).





[21]See Osterberg v. Peca, 12 S.W.3d
31, 55 (Tex.) (holding that when no objection is made to the charge,
sufficiency of the evidence is measured against the charge submitted and not
against the charge that should have been submitted), cert. denied, 530
U.S. 1244 (2000); Burlington N. R.R. Co. v. Gen. Projection Sys., Inc.,
No. 05‑97‑00425‑CV, 2000 WL 1100874, at *8 (Tex. App.CDallas Aug. 8, 2000, pet. denied) (op. on reh=g) (not designated for publication) (holding that when the jury was
not asked to determine the fair market value of the plaintiff=s property at the time of conversion and was only asked what sum of
money would fairly and reasonably compensate the plaintiff for its damages
caused by the conversion, and when the plaintiff did not argue on appeal that
the trial court erred by refusing to submit the issue of fair market value, the
court measured the sufficiency of the evidence against the defective issue
actually submitted).





[22]See Ryno v. Tyra, 752 S.W.2d 148, 150
(Tex. App.CFort Worth 1988, writ denied) (stating that in a claim for conversion
of an automobile, Ain the absence of any contest of the automobile=s value, it was unnecessary for the trial court to submit an issue on
compensatory damages@).





[23]See Humes v. Hallmark, 895 S.W.2d
475, 479B80 (Tex. App.CAustin 1995, no writ) (noting that value of stocks or commodities,
property subject to a rapidly changing market, may need to be established
within days or weeks of the conversion but that the time to measure the value
of an artifact, the value of which is not subject to the same kind of market
flux, does not need to be so compressed).





[24]See Sibley, 226 S.W.2d at 886 (noting that when the
defendant had satisfied the money judgment against him on the plaintiff=s conversion claim, the plaintiff would Athereby become conclusively estopped from asserting any further right,
title[,] or interest in or to the property in controversy@).





[25]Tex. R. App. P. 33.1(a); see also Tex. R. Evid. 103(a)(1).





[26]Bushell v. Dean, 803 S.W.2d 711, 712
(Tex. 1991) (op. on reh=g).





[27]See Tex. R. App. P. 33.1(a); Tex. R. Evid.
103(a)(1); Campbell v. State, 85 S.W.3d 176, 185 (Tex. 2002); McDaniel
v. Yarbrough, 898 S.W.2d 251, 252 (Tex. 1995).  





[28]Equistar Chems., L.P. v. Dresser-Rand Co., 240 S.W.3d 864, 868 (Tex. 2007).





[29]Tex. R. App. P. 33.1(a). 





[30]See Banda v. Garcia, 955 S.W.2d
270, 272 (Tex. 1997). 





[31]See Tex. R. App. P. 33.1(a).





[32]T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 220B21 (Tex.
1992); see also Tex. R. Civ. P. 324(b) (listing appellate complaints
that must be preserved by a motion for new trial).





[33]Tex. R. App. P. 45; Clopton v. Pak, 66 S.W.3d 513, 517 (Tex.
App.CFort Worth 2001, pet. denied).





[34]Clopton, 66 S.W.3d at 517; Durham v. Zarcades,
270 S.W.3d 708, 720 (Tex. App.CFort Worth
2008, no pet.).