Opinion issued August 25, 2005











In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00766-CV




CHAVEZ CONSTRUCTION, INC., Appellant

V.

JOE D. MCNEELY, Appellee




On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2001-49072




O P I N I O N

          Appellant, Chavez Construction, Inc. (“Chavez”), appeals from a judgment
rendered on a verdict awarding appellee, Joe D. McNeely, damages in his negligence
action. We address (1) whether Chavez owed a duty to McNeely; (2) whether Chavez
breached a duty owed to McNeely; (3) whether Chavez’s actions constituted a
proximate cause of McNeely’s injuries; and (4) whether the trial court abused its
discretion in refusing to allow Chavez to cross-examine McNeely by (I) questioning
him concerning 49 changes that he made to his oral deposition by way of an errata
sheet and (ii) admitting into evidence McNeely’s corresponding original deposition
answers, to show how they differed from the changes in the errata sheet. We affirm.
Facts
          In April 2000, Chavez was employed on the Victoria Lace Ranch to power-wash fences. McNeely owned the ranch. To obtain the necessary water for its power-washing machines, Chavez tapped into the waterlines that fed McNeely’s livestock-watering troughs. The troughs were equipped with an automated fill system that
maintained the water level in the troughs, making very little noise, so that horses
could drink without being frightened. To tap into McNeely’s trough water supply,
Chavez would remove the trough’s hose from the nearby spigot and attach its own
hose, which would run to a power washer. At the end of each work day, Chavez was
supposed to pick up its hoses and to reassemble the trough’s hoses the way in which
they had been found.
          On a few occasions, in violation of its own safety policy, Chavez failed to
reassemble the trough’s watering system and left its own equipment out in the field
at the end of the work day. On one occasion, Chavez failed to reassemble the
watering system and placed its own hose, while still attached to the spigot, inside the
trough. On April 29, 2000, while riding one of his horses on the ranch, McNeely
noticed that the water level in one trough was low. McNeely assumed that the spigot
was merely turned off. McNeely rode over to the trough, leaned off one side of his
horse to turn on the water spigot, and righted himself in the saddle. As the water
came on, the loose end of the Chavez hose came out of the trough and either hit or
sprayed McNeely’s horse in the face. The horse spooked and bucked McNeely off. 
McNeely sustained serious injuries, leaving him a quadriplegic. McNeely brought
a negligence action against Chavez, and a judgment was rendered in his favor,
acknowledging that he was 50 percent contributorily negligent. 
Duty
A.      Inherent Risk
          In its first issue, Chavez contends that the trial court should have incorporated
an “inherent risk” standard in the charge, instructing that it had no duty to protect
McNeely from the inherent risks of horseback riding and, at most, had only a duty not
to act recklessly or intentionally. 
          To preserve a complaint for appellate review, a party must present a timely
request, objection, or motion stating specific grounds for the ruling desired. Tex. R.
App. P. 33.1(a)(1). Further, the trial court must have ruled on the request, objection,
or motion, either expressly or implicitly, or the complaining party must have objected
to the trial court’s refusal to rule. Tex. R. App. P. 33.1(a)(2). Chavez never presented
the theory of inherent risk to the trial court. It, therefore, failed to preserve this theory
for appeal. 
          We overrule Chavez’s first issue.
B.      Foreseeability
          In its second issue, Chavez contends that it owed no legal duty to McNeely
because no evidence supported the conclusion that his injuries were foreseeable.
          McNeely contends that Chavez has failed to preserve its no-duty challenge. 
No-evidence complaints can be preserved in a motion for directed verdict, motion to
disregard, a motion for judgment notwithstanding the verdict, a motion for new trial,
or objections to the charge. T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d
218, 220-21 (Tex. 1992). Chavez properly preserved this challenge for appeal by
timely moving for new trial on general no-evidence-of-negligence grounds. See
Edward D. Jones & Co. v. Fletcher, 975 S.W.2d 539, 543 (Tex. 1998). We thus
examine the merits of this complaint. 
          An appellate court reviews a legal-sufficiency challenge to determine if any
evidence of probative value exists to support the jury’s findings. Glover v. Texas
Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981); In re King’s Estate, 244 S.W.2d
660, 661 (Tex. 1951). That review requires this Court to consider only the evidence
and inferences that tend to support the finding of duty and to disregard all evidence
and inferences to the contrary. See Sherman v. First Nat’l Bank, 760 S.W.2d 240,
242 (Tex. 1988). Only when the evidence offered to prove a vital fact is so weak as
to do no more than create mere suspicion of its existence is the evidence nothing more
than “a scintilla” and, in legal effect, no evidence. Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983). 
          The existence of duty generally is a question of law for the court to decide from
the facts surrounding the occurrence in question. See Greater Houston Transp. Co.
v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). In determining duty, a court should
consider “several interrelated factors, including the risk, foreseeability, and likelihood
of injury weighed against the social utility of the actor’s conduct, the magnitude of
the burden of guarding against the injury, and the consequences of placing the burden
on the defendant.” Id. Of these factors, foreseeability is the dominant consideration. 
Id. Since the court in Palsgraf held that “[t]he risk reasonably to be perceived defines
the duty to be obeyed,” when determining whether a duty exists, courts have widely
embraced the consideration of foreseeability. Palsgraf v. Long Island R.R., 162 N.E.
99, 100 (N.Y. 1928).
          A person has a duty to prevent injury to others when he negligently creates a
dangerous situation and it reasonably appears or should appear that another may be
harmed because of his actions. See Smithkline Beecham Corp. v. Doe, 903 S.W.2d
347, 353 (Tex. 1995) (reviewing the general principles stated in Buchanan v. Rose,
159 S.W.2d 109, 110 (Tex. 1942)). The requirements of foreseeability are (1) “‘that
the injury be of such a general character as might reasonably have been anticipated’”;
and (2) “‘that the injured party should be so situated with relation to the wrongful act
that the injury to him or to one similarly situated might reasonably have been
foreseen.’” Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 551 (Tex. 1985)
(quoting Carey v. Pure Distrib. Corp., 124 S.W.2d 847, 849 (Tex. 1939)). The
plaintiff must show that the defendant “should have anticipated the dangers that his
negligent act created for others.” Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex.
1992); Ambrosio v. Carter’s Shooting Ctr., Inc., 20 S.W.3d 262, 265 (Tex.
App.—Houston [14th Dist.] 2000, pet. denied). In order to establish foreseeability,
only the general danger must be foreseeable. Walker v. Harris, 924 S.W.2d 375, 377
(Tex. 1996).
          The evidence at trial, when viewed in the light most favorable to the verdict,
shows that the general danger that caused McNeely’s injuries was foreseeable. 
Chavez’s superintendent, Johnny Hughes, testified that McNeely’s ranch was
populated with “mostly horses” at the time that Chavez was employed there and that
the horses drank from the troughs. Hughes further testified that he had leaned over
on a horse to turn on a spigot “lots of times” and that he knew that anything could
spook a horse. Chavez’s employees also knew that McNeely rode his horses around
the ranch, checking to see that the ranch was in good condition. An expert witness,
Mike Abke, testified that leaning over a horse to turn on a spigot is not an uncommon
practice for a rancher. Moreover, Chavez had been warned on occasions before the
accident to put away its equipment when it was not in use. Hughes also admitted a
general awareness that equipment left out could be dangerous. 
          Knowing that (1) someone would have to turn the water supply to the trough
back on; (2) McNeely rode his horses around the ranch; and (3) it was not an
uncommon task for a rancher to lean over off of his horse to turn on a spigot, Chavez
should have anticipated that McNeely might attempt to turn on the water to his trough
while on or around a horse. A reasonable inference from the testimony that anything
could spook a horse is that a horse could be frightened from an unsecured hose
whipping around when the water spigot was turned back on. Chavez should have
known that a horse could be spooked if someone turned back on the water supply. 
Therefore, it is foreseeable that some injury could result from Chavez’s leaving its
hose in the trough.
          The evidence is not so weak as to do no more than create a mere suspicion of
the existence of foreseeability. Because more than a scintilla of evidence exists to
support the finding of forseeability, this evidence is not, in legal effect, no evidence. 
See Kindred, 650 S.W.2d at 63. Accordingly, we hold that the trial court did not err
in overruling Chavez’s motion for new trial on the basis of a lack of duty. 
          We overrule Chavez’s second issue. 
Breach
          In its third issue, Chavez contends that no evidence exists to show that it
breached a duty owed to McNeely. Chavez also properly preserved this challenge by
timely moving for a new trial on a general no-evidence-of-negligence ground. See
Edward D. Jones & Co., 975 S.W.2d at 543. 
          Chavez does not contest the fact that it left its hose in the trough and attached
to the spigot. Rather, Chavez repackages its foreseeability argument and contends
that its acts or omissions did not create an unreasonable risk of injury to a person
because a reasonable and prudent construction company could not have foreseen
McNeely’s injuries. This argument goes to foreseeability, i.e., to duty or causation,
not to breach. Moreover, the same facts and inferences that defeated Chavez’s
argument with respect to duty defeat that challenge here, as well. 
          We overrule Chavez’s third issue.
Proximate Cause
          In its fourth issue, Chavez argues that there was no evidence supporting the
conclusion that its actions were the proximate cause of McNeely’s injuries. 
          “The question of proximate cause is one of fact particularly within the province
of a jury, and a jury finding on proximate cause will be set aside only in the most
exceptional circumstances.” Tex. Dep’t of Transp. v. Olson, 980 S.W.2d 890, 893
(Tex. App.—Fort Worth 1998, no pet.). Proximate cause consists of both cause-in-fact and foreseeability. Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex.
1995). To establish cause-in-fact, or “but for” causation, a party must show that the
defendant’s negligence was a substantial factor in bringing about his injury and was
a factor without which no harm would have been incurred. Id.; see Ambrosio, 20
S.W.3d at 265. While examining the record to determine if there is sufficient
evidence of causation, we must view the evidence in a light that tends to support the
finding of causation and disregard all evidence and inferences to the contrary. 
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001).
A.      Cause-in-Fact
          When addressing the issue of cause-in-fact, the court in Union Pump examined 
the circumstances surrounding the plaintiff’s injuries. See Union Pump, 898 S.W.2d
at 776. The court determined that the plaintiff’s injuries were too remotely connected
with Union Pump’s actions or the pump itself to constitute the legal cause of the
injuries. Id. In Union Pump, an employee of the company, after attempting to aid in
extinguishing a fire, slipped off of a pipe rack while following another employee on
an unsafe route out of the scene of the extinguished fire. Id. at 774. The court held
that, even if the pump fire was the “but for” cause of the plaintiff’s injuries, the fire
had been extinguished and “the forces generated by the fire had come to rest when
she fell off the pipe rack.” Id. at 776. 
          Chavez asserts that it only furnished the condition that made McNeely’s 
injuries possible and that its act was not the cause-in-fact of those injuries. See Doe
v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995). Appellant
relies on Boys Clubs, in which the court stated: 
The evidence must go further, and show that such negligence was the
proximate, and not the remote, cause of resulting injuries. . . . [and]
justify the conclusion that such injury was the natural and probable
result thereof. In other words, even if the injury would not have
happened but for the defendant’s conduct, the connection between the
defendant and the plaintiff’s injuries simply may be too attenuated to
constitute legal cause. 
 
Id. (citations omitted). 
          The present case is distinguishable because it does not present an exceptionally
attenuated causation chain. See, e.g., Boyd v. Fuel Distribs., Inc., 795 S.W.2d 266,
272 (Tex. App.—Austin 1990, writ denied) (holding that a convenience store’s sale
of beer to an 18-year-old was not the cause in fact of a drunk driver’s fatal car
accident because the sale was to the passenger and not to the driver); Tex. Am. Bank
v. Boggess, 673 S.W.2d 398, 402 (Tex. App.— Fort Worth 1984, writ dism’d by agr.)
(ruling that a bank’s employment of a repossessor was not the cause-in-fact of the car
owner’s injuries because the owner was injured by a person whom the repossessor
had hired without the bank’s knowledge). 
          Here, pursuant to Boys Clubs, the evidence does “go further.” Chavez
disassembled the trough’s watering system, left its hose in the trough, and turned off
the spigot such that somebody would have to turn it back on. Because the purpose
of the trough was to provide water for the horses, it was a natural course of events for
McNeely to turn on the spigot when he noticed that the trough was low on water. It
was equally natural for McNeely to ride over on his horse to turn on the spigot while
assuming that the automated fill system was intact because Chavez had been
instructed to reassemble the trough’s water supply each time its employees left the
ranch. Chavez was aware that McNeely rode his horses and was also aware that it
was a common task for a rancher to lean over on a horse to turn on a water spigot. 
Chavez’s superintendent, Hughes, testified that he had turned on a water spigot while
on a horse “lots of times.” 
 
          It was also a natural consequence that the hose inside the trough would whip
around when the water was turned on and that this could spook a horse present at the
trough. Because the evidence does “go further” and establishes that the negligence
was not merely the remote cause of the injury, Chavez did not merely “furnish a
condition which made the injury possible.”


 See Boys Clubs, 907 S.W.2d at 477. 
          Chavez further contends that, even if it had properly reattached the trough’s
hose, McNeely’s horse still could have spooked. However, in an expert
demonstration, Michael Abke, a cowboy about McNeely’s build, repeatedly leaned
off the side of McNeely’s horse and turned on the water spigot without spooking the
horse. This evidence supports the conclusion that McNeely’s horse spooked because
the hose either sprayed or hit its face, not because McNeely leaned over the horse’s
side to turn on the spigot. 
          Together, this is some evidence showing that Chavez’s negligence was the
cause-in-fact of McNeely’s injuries. 
B.      Foreseeability
          The test for foreseeability is whether a person of ordinary intelligence would
have anticipated the danger that his or her negligence created. Travis, 830 S.W.2d
at 98; see Ambrosio, 20 S.W.3d at 265. Foreseeability, however, “does not require
a person to anticipate the precise manner in which injury will occur once he has
created a dangerous situation through his negligence.” Travis, 830 S.W.2d at 98; see
Ambrosio, 20 S.W.3d at 265. Only the general danger must be foreseeable, “not the
exact sequence of events that produced the harm.” Travis, 830 S.W.2d at 98; see
Ambrosio, 20 S.W.3d at 265. “The danger of injury is foreseeable if its ‘general
character might reasonably have been anticipated.’” Castillo v. Gared, Inc., 1 S.W.3d
781, 786 (Tex. App.Houston [1st Dist.] 1999, pet. denied) (quoting Nixon, 690
S.W.2d at 551)). In Castillo, a motel guest sued a security company after being raped
by a security guard of the motel from whom she sought help. Id. at 783-84. The
Castillo Court concluded that the plaintiff’s reliance on the testimony of the security
company’s president did not provide the necessary evidence “that the general
character of the act in question might reasonably have been anticipated.” Id. at 787. 
This case is distinguishable from Castillo because the general danger that some injury
would result from Chavez’s act of leaving the hose unattached in the trough is
foreseeable. 
          Chavez contends that its negligence was not the proximate cause of McNeely’s
injuries because his injuries were not foreseeable. In its appellate brief, Chavez 
argues that no person could have anticipated that leaving a water hose in a trough
could create any danger of personal injury to a human being. 
          For the same reasons that we have held, based on foreseeability, that the
evidence showed that Chavez owed a duty to McNeely, we also hold that some
evidence showed that McNeely’s injuries were, in fact, foreseeable. 
          We overrule appellant’s fourth issue. 
Exclusion of Evidence
          In its fifth issue, Chavez contends that the trial court erred by refusing to allow
Chavez to cross-examine McNeely (1) by questioning him concerning 49 changes
that he made to his oral deposition by way of an errata sheet and (2) by admitting into
evidence McNeely’s corresponding original deposition answers, to show how they
differed from the changes in the errata sheet. The trial court refused to admit the
original deposition answers that McNeely had changed and ruled that Chavez could
cross-examine McNeely only with his final deposition answers, as corrected by the
errata sheet, rather than with his original answers that he later changed.
          To challenge exclusion of evidence by the trial court on appeal, the
complaining party must present the excluded evidence to the trial court by offer of
proof. Wade v. Comm’n for Lawyer Discipline, 961 S.W.2d 366, 374 (Tex.
App.—Houston [1st Dist.] 1997, no pet.); Fletcher v. Minnesota Mining & Mfg. Co., 
57 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Otherwise,
the party waives its complaint. Id. A trial court may exclude relevant evidence “if
its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay,
or needless presentation of cumulative evidence.” Tex. R. Evid. 403. 
          This Court reviews a trial court’s decision on whether to admit evidence under
an abuse-of-discretion standard. Transcontinental Gas Pipeline Corp. v. Texaco,
Inc., 35 S.W.3d 658, 670 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). A trial
court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to
guiding rules or principles. Lookshin v. Feldman, 127 S.W.3d 100, 103 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied). An appellate court should reverse for
an abuse of discretion only if the error “probably caused the rendition of an improper
judgment.” Tex. R. App. P. 44.1. 
          Chavez asserts that the excluded evidence and line of questioning was relevant
because it went to McNeely’s credibility. Chavez has only partially preserved its
challenge because Chavez’s counsel made an offer of proof concerning only three of
the deposition changes.


 See Wade, 961 S.W.2d at 374. 
          We begin by noting that Chavez’s counsel had already cross-examined
McNeely on whether McNeely had changed his deposition testimony concerning
prior employment with Chavez, referring, in doing so, to McNeely’s original
deposition answer and the fact that McNeely had changed it by errata sheet. Any
further evidence of the changed deposition testimony concerning whether McNeely
had ever been employed by Chavez was thus cumulative of what was already
reflected in the record. A trial court generally does not abuse its discretion by
declining to admit merely cumulative evidence. See Tex. R. Evid. 403; Ordonez v.
M. W. McCurdy & Co., 984 S.W.2d 264, 274 (Tex. App.—Houston [1st Dist.] 1998,
no pet.). Moreover, even if the trial court had somehow erred in precluding further
cross-examination on this one subject, that error would have been harmless because
Chavez had already been able to cross-examine McNeely on it. See Tex. R. App. P.
44.1.
          As for the remaining two areas of cross-examination to which Chavez
preserved its challenge, we hold that any possible error was harmless. Error is 
reversible only if it “probably caused the rendition of an improper judgment.” Tex.
R. App. P. 44.1. Chavez contends that the alleged error was harmful because Chavez
could have used the conflicting answers to attack McNeely’s credibility. However,
Chavez’s counsel did impeach McNeely in these two areas: Chavez used McNeely’s
revised deposition answers to cross-examine him when McNeely testified at trial
somewhat hesitantly or inconsistently with those revised answers. For example,
concerning which foot McNeely had in the stirrup when the accident happened, the
following cross-examination occurred:
Chavez’s counsel:Now, when you testified on your sworn [revised]
answers . . . , you said that the horse drug you
because you had your right foot in the stirrup, and
I’m trying to understand if you went over like just
told the jury, how did you get drug with your right
foot in the stirrup? . . .
 
McNeely:I don’t know, might have been my left foot in the
stirrup or my right foot might not have even been in
the stirrup. I might have been imagining that when
I—sir, I was unconscious and I was—I just had the
worst lick of my life. I can’t remember exactly. I
thought that I was being drugged and kicked a lot
but maybe I wasn’t, maybe he just stepped on me. 
Heck, I don’t know.

And concerning whether just the hose had hit the horse, or whether the hose or water
could have hit the horse, the following cross-examination occurred after the
complained-of ruling:
McNeely:He [the horse]—he—the water hose came up out of
the water and hit him upside of the head or the water
hit him. I don’t know if the hose hit him or the
water hit him and he went bananas.
 
Chavez’s counsel:Well, when you gave your deposition you were
pretty sure that the hose hit him in the face, right?
 
McNeely:No, I don’t know what my deposition said. I know
the water hose or the water itself hit him in the head.
 
Chavez’s counsel:So you didn’t see the hose going over but you saw it
hit the horse in the head, right?
 
McNeely:I sure did.
 
. . .
 
Chavez’s counsel:So, are you saying to the ladies and gentlemen of the
jury that the hose hit the horse in the face after you
had already gotten up on top of the horse?
 
McNeely:That’s what I’m saying.

(Emphasis added.)

Finally, the following cross-examination had already occurred, without objection,
before the complained-of ruling:
Chavez’s counsel:Then when you made your deposition changes, you
remember after your sworn deposition was typed up
you made a number of changes to the deposition,
right?
 
McNeely:I did.
 
Chavez’s counsel:As a matter of fact I think you made 49 changes,
does that sound right?
 
McNeely:I don’t know.

Therefore, the jury had already heard, although in general terms, that McNeely had
made “a number of changes” to his original deposition answers.
          We overrule Chavez’s fifth issue. Conclusion
          We affirm the judgment of the trial court. 
 
 
                                                                        Tim Taft 
                                                                        Justice
 
Panel consists of Justices Taft, Jennings, and Bland.