# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00679-CV

**Tariq Majeed, Appellant**

**v.**

**Sajjad Hussain, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-01-001209, HONORABLE GUS J. STRAUSS JR., JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a premises-liability suit seeking personal-injury damages allegedly caused by third-party criminal acts. While working as a clerk in an East Austin convenience store and gas station, appellee Sajjad Hussain was assaulted by an unidentified male. Hussain subsequently sued the alleged owners or controllers of the premises, including appellant Tariq Majeed, asserting premises-liability theories of negligence predicated on a duty on the defendants' part to provide security measures to protect Hussain from a foreseeable and unreasonable risk of crime. A jury found that the defendants' negligence had proximately caused Hussain's injuries and awarded Hussain a total of $377,811.19 in actual damages. The district court rendered judgment on the jury's verdict. Majeed appeals.

In three issues on appeal, Majeed challenges the legal and factual sufficiency of the evidence establishing (1) a foreseeable risk of harm and concomitant duty to provide security

measures to protect Hussain from third-party criminal acts, (2) that any breach of such a duty proximately caused Hussain's injuries, and (3) the damages for medical expenses and past and future physical-impairment damages awarded by the jury. In addition to responding to Majeed's issues, Hussain asserts that Majeed failed to preserve his current contentions for appeal.

As we explain below, we agree with both parties in part—while we conclude that the district court's judgment must be reversed because there is legally insufficient evidence of proximate cause, we also hold that Majeed preserved only a right to a remand for new trial rather than rendition of a take-nothing judgment. Consequently, we will reverse the district court's judgment and remand for a new trial.

**BACKGROUND**

The underlying events occurred at a convenience store and gas station located at 1425 East 12th Street in Austin. Unlike the typical "walk-in" convenience store at which customers enter through a doorway and make purchases inside, customers at this store made purchases from a store clerk through a sliding glass "drive-through" window that they would approach either in their cars or on foot. At relevant times, appellee Hussain was employed as a clerk in the store, and his responsibilities included staffing the sliding glass window. Hussain described the window as "really big" and, at the time of the incident, "really broke." He elaborated that the window could not slide back and forth or lock. This made it necessary, Hussain explained, "to take the window out" or "take the window on the side" at the beginning of the work day so as to leave it open. When he closed the store at the end of the day, Hussain added, he would "put the big stick in the back" to secure the window shut.

2

Hussain testified that while he was staffing the aforesaid window on July 11, 2000, at approximately 4:00 p.m., an unidentified black male whom Hussain estimated was between 5' 3" and 5' 4" and appeared to be between 15 to 17 years of age approached the window and asked to buy cigarettes. Hussain asked to see the individual's identification. After the individual could not produce an ID, Hussain refused to sell him the cigarettes, and the individual left. A short while later, the individual returned and asked to buy beer. Hussain again asked to see identification. At this point, according to Hussain, the individual became angry and said, "I just told you I don't have my ID on me." Then, Hussain recounted, the individual "walked back," picked up an object (later determined to be an empty can of "Fix-a-Flat Tire"), and "just straight throw it and hit my eyes." Hussain testified that the can flew through the open window and struck him in his right eye. According to Hussain, the injury resulted in permanent vision loss in that eye.

Hussain sued appellant Majeed and a co-defendant, Muhammed Naeem, alleging that each controlled the store premises and asserting negligence claims based on premises-liability theories. These claims were predicated on the existence of a duty to provide reasonable security measures that arose because "it was foreseeable that the premises, as owned, operated, managed, and maintained by Defendants, exposed employees and business invitees on the premises, like Plaintiff herein, to an unreasonable risk of harm from criminal activity." *See Timberwalk Apartments v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998); *Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 466 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The case proceeded to trial.

Neither Majeed nor Naeem attended trial in person, and only Majeed appeared through counsel. The jury heard evidence that, by time of trial, Naeem had left the country and

3

returned to his native Pakistan[1] and that Majeed was then incarcerated in a federal institution on convictions for gambling offenses and money-laundering in connection with eight-liner operations at convenience stores he owned or operated.

In his case-in-chief, Hussain presented his own testimony, photographs and documentary evidence, and excerpts from depositions of Majeed. After Hussain rested, Majeed moved for a directed verdict, which the district court denied. Thereafter, Majeed presented further excerpts from his deposition and additional documentary evidence. After the close of evidence, Majeed did not re-urge his directed-verdict motion.

The district court submitted two questions to the jury. Question 1 inquired whether the negligence, if any, of Majeed and/or Naeem "proximately cause[d] the occurrence in question involving the criminal acts of an unidentified third party." The jury answered in the affirmative as to both defendants. Predicated on an affirmative liability finding, Question 2 asked the jury to determine the amount of Hussain's damages. The jury awarded Hussain $65,000 for past pain and suffering, $50,000 for future pain and suffering, $5,720 in past lost wages, $165,000 in past physical impairment, $190,000 in future physical impairment, and $2,091.19 in past medical expenses, for a total of $377,811.19 in actual damages.

The district court rendered judgment on the jury's verdict. Thereafter, Majeed filed on the same day a motion for new trial and a notice of appeal. *See* Tex. R. App. P. 26.1(a)(1), 27.1. The new-trial motion was overruled by operation of law.

---

[1] The jury heard testimony that all of the participants in the underlying events (with the exception of Hussain's assailant) were Pakistani immigrants who were connected through business, family, or religious ties within that community.

4

**ANALYSIS**

Majeed brings three issues on appeal. In his first issue, Majeed argues that there is legally and factually insufficient evidence of the foreseeable risk of harm required to give rise to a duty on the part of Majeed to protect Hussain from an unreasonable risk of criminal activity.[2] In his second issue, Majeed urges that the evidence is legally and factually insufficient to support a finding that any breach of a duty of Majeed to undertake reasonable security measures to protect Hussain from criminal activity proximately caused Hussain's injury. In his third issue, Majeed contends that the evidence is legally and factually insufficient to support the jury's award of damages for medical expenses and past and future physical impairment.

**Preservation**

As a threshold matter, Hussain argues that Majeed has failed to preserve any of the complaints he now brings on appeal. Specifically, Hussain contends that Majeed waived his directed-verdict motion by failing to renew it after the close of evidence, that his new-trial motion was "too general to preserve error," and that he did not attempt to preserve his no-evidence complaints through any other means. In the alternative, Hussain asserts that if Majeed preserved any of his current evidentiary-sufficiency complaints through his new-trial motion, that procedural mechanism, whether used to raise a legal-sufficiency or factual-sufficiency complaint, is a predicate for an appellate court merely to grant the relief requested in that motion—a new trial—rather than

---

[2] Although the issue was contested at trial, on appeal Majeed does not dispute that he had control of the store premises.

5

a rendition of a take-nothing judgment. But Majeed waived any right even to this remedy, Hussain insists, by praying solely for rendition, not a remand, in his appellant's brief.

The core principle underlying error-preservation requirements is that the trial court should be given the opportunity to correct potential errors before the case proceeds on appeal. *See*, *e.g.*, *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999). To that end, "our civil rules of procedure and our decisions thereunder require a party to apprise a trial court of its error before that error can become the basis for reversal of a judgment." *Id.* In particular, rule of appellate procedure 33.1 generally requires that before a complaint can be a prerequisite for appellate review, the record must show that (1) the complaint was raised before the trial court by timely request, objection, or motion that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from context," (2) complied with the requirements of the rules of procedure or evidence, and (3) that the trial court ruled or refused to rule on the request. Tex. R. App. P. 33.1(a). In turn, rule of appellate procedure 43.3 provides that if we find reversible error in the trial court's judgment, we must "render the judgment the trial court should have rendered," except when "a remand is necessary for further proceedings," or "the interests of justice require a remand for another trial." *Id.* R. 43.3; *see also id.* R. 44.1.

To preserve his no-evidence complaints for appeal, Majeed was required to raise them in the district court through either (1) moving for directed verdict; (2) objecting to the submission of jury questions; (3) moving to disregard jury findings; (4) moving for judgment notwithstanding the verdict; or (5) moving for new trial. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d

6

218, 220 (Tex. 1992); *cf.* Tex. R. App. P. 33.1(d) (preservation rule in non-jury cases). However, only the first four methods are a predicate for an appellate reversal and rendition of a take-nothing judgment; the judgment the trial court should have rendered in response to a motion for new trial is the granting of a new trial, not rendition. *See Horrocks v. Texas Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex. 1993).

Majeed did not raise any of his no-evidence complaints through objecting to jury questions, moving to disregard jury findings, or moving for judgment notwithstanding the verdict. Consequently, he can obtain reversal and rendition of a take-nothing judgment based on such a complaint only if he preserved it through his motion for directed verdict. *T.O. Stanley Boot Co.*, 847 S.W.2d at 220. Hussain argues that Majeed waived any no-evidence complaints raised in his directed-verdict motion by failing to re-urge the motion at the close of evidence.[3] He relies on a long line of courts of appeals' cases holding that where, as here, a defendant unsuccessfully moves for directed verdict after the plaintiff rests his case-in-chief, the defendant waives error in the trial court's denial of the motion if he presents evidence and fails to renew or re-urge the motion after the evidence closes. *See, e.g.*, *Ratsavong v. Menevilay*, 176 S.W.3d 661, 666-67 (Tex. App.—El Paso 2005, pet. denied) ("Texas law is well settled that a defendant who moves for a directed verdict after the plaintiff rests, but thereafter elects not to stand on its motion for instructed

---

[3] The grounds for this motion were that (1) evidence regarding various contracts between Naeem and Majeed established that Naeem controlled the premises and would have any duty to provide security (a contention that Majeed has not brought forward on appeal); and (2) even if Majeed controlled the premises, a third-party criminal act was a superseding cause of Hussain's injuries as a matter of law and there was no evidence giving rise to a duty on Majeed's part to protect Hussain from such acts.

verdict, and proceeds with her own case, waives her motion for directed verdict unless the motion is reurged at the close of her case."); *Humes v. Hallmark*, 895 S.W.2d 475, 477 (Tex. App.—Austin 1995, no writ) (appellant defendant waived complaint that trial court erred in denying directed-verdict motion "because she did not re-urge her motion at the conclusion of evidence") (citing *Shindler v. Marr & Assoc.*, 695 S.W.2d 699, 706 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 114 (Tex. Civ. App.—Fort Worth 1976, writ ref'd n.r.e.)); *Douglas*, 533 S.W.2d at 111 ("The law is well settled that a defendant by electing not to stand on its motion for an instructed verdict made after the plaintiff had introduced its evidence and rested its case, and by proceeding with the introduction of its own evidence, waives its motion for an instructed verdict."); *Grand Temple & Tabernacle, etc. v. Johnson*, 156 S.W. 532, 533 (Tex. Civ. App.—San Antonio 1913, no writ) ("Appellee insists that under the decisions of this state and the great weight of authority appellant is conclusively presumed to have waived its motion for an instructed verdict by having elected to proceed with its case and present its defenses rather than stand upon its motion and submit the case to the jury upon the evidence of appellee. There is no doubt about the correctness of appellee's position upon this point."). This principle follows from the fact that once the defendant elects to present its own evidence, that additional evidence, and any other evidence presented at trial, must be considered by the trial court in determining whether there is legally sufficient evidence to support submitting the case to the jury. *See San Antonio Traction Co. v. Kelleher*, 107 S.W 64, 66 (Tex. Civ. App.—San Antonio 1908, no writ). Thus, to preserve a complaint that the evidence was legally insufficient to support submission to the jury and that the trial court was therefore required to direct a verdict for the defendant, the defendant must challenge

the entirety of the evidence by asserting or re-urging its directed-verdict motion after all of the evidence is in. *See Cliffs Drilling Co. v. Burrows*, 930 S.W.2d 709, 712 (Tex. App.—Houston [1st Dist.] 1996, no writ) ("When a second motion for directed verdict is made after the close of evidence, the court must consider all of the evidence, regardless of who offered it, to determine whether there is a fact issue for the jury."); *Shindler*, 695 S.W.2d at 706 ("Should the movant, after his [directed-verdict] motion is denied, offer additional evidence, he thereby waives his earlier motion and when he later moves again, the new motion is determined upon all of the evidence, regardless of by whom it is offered."). The original directed-verdict motion addressed solely to the plaintiff's evidence would not raise this challenge, and any error in denying that motion would, in effect, be rendered harmless by unchallenged additional evidence. *See Mound Oil Co. v. F.W. Heitmann Co.*, 148 S.W. 1187, 1188 (Tex. Civ. App.—Galveston 1912, no writ) ("In order to avail itself of the error, if any, in the refusal of the trial court to direct a verdict in its favor upon the evidence for appellee, appellant should have rested its case on this evidence. If there is anything in the evidence introduced for appellant to help out appellee's case, it cannot be deprived of the benefit of it by the request to the court to instruct a verdict for appellant upon the evidence for appellee.").

Although he acknowledges that this Court and our sister courts have long adhered to "the principle that an appeal of the denial of a directed verdict motion is waived if not reurged at the close of all evidence," Majeed questions whether we should continue to do so, suggesting that the rule "serves no obvious purpose in current trial practice." He observes that the principle has been

9

criticized by one court of appeals justice,[4] is not specifically mandated in the rules of civil procedure, and has apparently never been squarely adopted by the Texas Supreme Court.[5]  To the extent we continue to recognize the principle, Majeed urges that it governs only whether the denial of a directed-verdict motion can itself be appealed but not whether the directed-verdict motion suffices to preserve a no-evidence complaint for appeal.  While "there is a body of law that finds that a directed verdict motion cannot be appealed if it is not reurged after the close of all evidence" and "a body of law . . . that holds that a legal sufficiency question can be preserved in a motion for directed verdict," Majeed insists, "there is no body of law that connects the two principles."

Regardless whether the issue is or should be viewed in terms of Majeed "waiving" any no-evidence challenges he raised in his directed-verdict motion, what is dispositive here is that Majeed's motion did not raise any of the same no-evidence challenges that he now brings on appeal. In his directed-verdict motion, Majeed challenged whether Hussain had presented legally sufficient evidence *during his case in chief* to raise a fact issue.  After the district court denied the motion, the

---

[4]  *See SIPCO Servs. Marine, Inc. v. Wyatt Filed Servs. Co.*, 857 S.W.2d 602, 608, 609-12 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd) (op. on reh'g) (Cohen, J. concurring); *see also Cliffs Drilling Co. v. Burrows*, 930 S.W.2d 709, 712 (Tex. App.—Houston [1st Dist.] 1996, no writ) (terming the rule "[l]ongstanding but criticized," and citing Justice Cohen's concurrence for that proposition).  Justice Cohen urged that the principle should be abandoned because it is unfair to evaluate the legal sufficiency of the evidence based on both the plaintiff's and defendant's evidence—and concomitantly require the defendant to re-urge its directed-verdict motion at the close of all evidence in order to preserve a no-evidence complaint—when the additional evidence would not have been introduced "except for the [trial] judge's erroneous denial of the motion for directed verdict."  *SIPCO Servs. Marine, Inc.*, 857 S.W.2d at 609 (Cohen, J. concurring).  "To determine legal sufficiency," Justice Cohen instead advocated "review[ing] only the evidence as it stood when the motion for directed verdict was denied."  *Id.* at 612.  To date, no reported Texas decision has adopted Justice Cohen's view.

[5]  *See id.* at 609 (rule "seems to have been created and enforced solely by the intermediate appellate courts").  Hussain has not contended otherwise.

jury heard additional evidence.  To prevail on his no-evidence challenges on appeal, Majeed must show that there was legally insufficient evidence presented at trial—regardless when or by whom presented—to raise a fact issue.  Majeed did not present any such complaints to the district court through his directed-verdict motion and his motion, therefore, did not preserve them for appeal.  *See Texas Animal Health Comm'n v. Miller*, 850 S.W.2d 254, 255-56 (Tex. App—Eastland 1993, writ denied) ("The only time that the [defendant] Commission presented its 'no evidence' contention to the trial court was in a motion for instructed verdict made at the close of [plaintiff] Miller's evidence.  After this motion was denied, the Commission presented its evidence.  The Commission did not re-urge its motion . . . after both sides closed.  The Commission, by not electing to stand on its motion for instructed verdict and by proceeding with the introduction of its own evidence, waived its motion for instructed verdict.  Thus, the Commission did not preserve its 'no evidence' complaint for appellate review.") (citations omitted); *see also* Tex. R. App. P. 33.1(a); 6 McDonald & Carlson, Tex. Civ. Prac., § 8:4, at 209-10 (2d ed.) ("Where the defendant moves for directed verdict when the plaintiff rests and the motion is denied, and the defendant then presents evidence, the motion for directed verdict is waived and will not preserve a challenge to the legal sufficiency of the evidence."); *cf. Bryan v. Dockery*, 788 S.W.2d 447, 449 (Tex. App.—Houston [1st Dist.] 1990, no writ) (while holding that defendant Bryan "did not preserve error on her motion for directed verdict" because Bryan waived it by presenting evidence and not re-urging her motion, reaching no-evidence challenge because Bryan had preserved it through motion for judgment notwithstanding verdict).

In sum, we agree with Hussain that there is no predicate in the record for us to render a take-nothing judgment in favor of Majeed if we were ultimately to sustain his complaints that

11

there is no evidence of duty, proximate cause, or damages. *See* Tex. R. App. P. 33.1, 43.3; *Horrocks*, 852 S.W.2d at 499. This leaves only Majeed's new-trial motion as a potential means by which he could have preserved his no-evidence challenges. Majeed was also required to raise his alternative factual-sufficiency challenges in his new-trial motion in order to preserve them for appeal. *See* Tex. R. Civ. P. 324(b).

Hussain asserts that Majeed's new trial motion was "too general to preserve error." The rules of civil procedure require that each point relied upon in a motion for new trial "shall briefly refer to that part of the ruling of the court . . . in such a way that the objection can be clearly identified and understood by the court." Tex. R. Civ. P. 321. Further, "[g]rounds of objections couched in general terms—as that the court erred in its charge, in sustaining and overruling exceptions to the pleadings, and in excluding or admitting evidence, the verdict is contrary to law, and the like—shall not be considered by the court." *Id.* R. 322. On the other hand, the Texas Supreme Court has explained, a general "no-evidence" complaint directed to a specific jury issue is usually sufficient to preserve error without further detail as to why the evidence is insufficient. *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008). Similarly, while a single no-evidence objection to "all 79 jury answers [would be] too general, the same objection addressed to each individual issue is adequate." *Id.* (citing *Biggers v. Cont'l Bus. Sys., Inc.*, 303 S.W.2d 359, 368 (Tex. 1957)). And, while acknowledging that "[i]f a single jury question involves many issues, it is possible that a general objection may not tell the trial court where to start," the supreme court has emphasized that such an objection made post-trial is not necessarily insufficiently specific considering the context in which it is made, as "post-trial objections will rarely be as detailed as an appellate brief because time is short, the record may not

12

be ready, and the trial court is already familiar with the case." *Id.* at 388. Further, the court has stressed, "[l]ike all other procedural rules, those regarding the specificity of post-trial objections should be construed liberally so that the right to appeal is not lost unnecessarily." *Id.* The "cardinal rule" for error preservation, after all, is simply that "an objection must be clear enough to give the trial court an opportunity to correct it." *Id*. at 387.

In his motion for new trial, Majeed "challenges the sufficiency of the evidence for the jury's answer to question 1." He continues, in separate subparagraphs, to argue both that "[t]here is no evidence" and "the evidence is insufficient" to support the jury's answer to Question 1. Question 1, as previously noted, was a broad-form submission that inquired whether "the negligence, if any, of [Majeed or Naeem] proximately cause[d] the occurrence in question involving the criminal acts of an unidentified party." Guided by the foregoing principles, we conclude that this portion of Majeed's new-trial motion was sufficiently specific to preserve his complaints that there was legally and factually insufficient evidence of the duty and proximate cause elements of Hussain's negligence claim. *See id.* at 387-88; *Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 543 (Tex. 1998) (general no-evidence point preserved objection that defendant had no duty to ascertain client's mental capacity) (cited with approval in *Arkoma Basin Exploration Co.*, 249 S.W.3d at 388 n.25); *Chavez Constr., Inc. v. McNeeley*, 177 S.W.3d 593, 598-99 (Tex. App.—Houston [1st Dist.] 2005, pet. granted, judgm't vacated w.r.m.) (no-duty challenge preserved "by timely moving for new trial on general no-evidence-of-negligence grounds").

Majeed's new-trial motion also asserted similar no-evidence and insufficient-evidence challenges to "the jury's answer to question 2." Question 2 asked the jury to award damages separately for each of (1) past physical pain and mental anguish, (2) future pain and mental anguish,

13

(3) lost wages, (4) past physical impairment, (5) future physical impairment, and (6) past medical expenses. Majeed did not specify the damage elements to which his no-evidence and insufficient-evidence complaints pertained. For reasons we explain below, we need not reach and express no opinion as to whether Majeed's new-trial motion was sufficiently specific to preserve his appellate challenge to the jury's damage awards for medical expenses and impairment.

In the event we conclude that Majeed's new-trial motion preserved error, Hussain argues in the alternative that Majeed waived any entitlement to a remand for new trial by failing to request such relief in his appellant's brief. Although Majeed argued in his appellant's brief that the evidence is both legally and factually insufficient and cited a leading factual-sufficiency review case,[6] he prayed solely for rendition of a take-nothing judgment, not a remand for new trial. After Hussain's appellee's brief asserted that Majeed had waived any entitlement to a new trial by failing to explicitly request such relief, Majeed argued in his reply brief that a request for remand had been implicit in his factual-sufficiency arguments, and added, "To the extent Majeed is required as a technical matter to expressly request an alternative remand, he hereby does so." Later, in response to an inquiry from the Court during oral argument, Majeed requested leave to amend his opening brief to add an alternative prayer for a remand. Hussain filed a response in opposition to Majeed's request for leave.

In contending that Majeed waived any right to a remand, Hussain emphasizes the principle that "[a] party generally is not entitled to relief it does not seek." *State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008). In one case frequently cited for this general principle, *see id.*, the

___

[6] *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

14

Texas Supreme Court denied a petition for review despite holding that the petitioner's charge-error complaint was meritorious because the petitioner had "specifically requested that this Court *not* remand for a new trial and prayed only for rendition," and thus "did not request appropriate relief for granting its petition for review." *Stevens v. National Ed. Ctrs., Inc.*, 11 S.W.3d 185, 185 (Tex. 2000) (per curiam) (op. denying pet.) (emphasis added); *see also id.* (observing that new trial is appropriate remedy for charge error). Some of our sister courts have since cited *Stevens* for the proposition that if an appellant requests reversal and rendition of judgment but not remand, an appellate court cannot reverse and remand. *See Molina v. Moore*, 33 S.W.3d 323, 327 (Tex. App.—Amarillo 2000, no pet.); *see also Jay Petroleum, L.L.C. v. EOG Resources, Inc.*, No. 01-08-00541-CV, 2009 Tex. App. LEXIS 3182, at *8 (Tex. App.—Houston [1st Dist.] May 7, 2009, pet. denied).

Here, Majeed did not wholly fail to request remand as a remedy, but did so after he had filed his appellant's brief. *Cf. Brown*, 262 S.W.3d at 370 ("We do not believe it proper to sua sponte grant relief Brown has not sought."). Hussain insists that Majeed's request in his reply brief for a remand came too late. He relies on the line of authorities holding that appellants cannot raise new "issues" or "arguments" for the first time in a reply brief. *See, e.g.*, *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, pet. denied) ("The rules of appellate procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's brief but not raised by appellant's original brief. *See* Tex. R. App. P. 38.3; *Barrios v. State*, 27 S.W.3d 313, 322 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("Pointing out the absence of an appellant's argument does not raise the argument or entitle appellant to assert that argument for the first time in his reply brief. If the rule were

15

construed otherwise, an appellee could never point out matters not raised by an appellant for fear of reopening the door."). In Hussain's view, this principle extends not only to the substantive issues and arguments Majeed raises, but the remedies he is requesting if his issues are sustained.

Our resolution of the parties' contentions is guided by the text and evident purposes of the rules of appellate procedure's briefing requirements. As appellant, Majeed was required to file an opening brief that, among other things, "state[d] concisely all issues or points presented for review" (which are to "be treated as covering every subsidiary question that is fairly included") and "contain[ed] a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(f), (i). The rules further instruct us to construe the briefing requirements "liberally" and that "substantial compliance" is sufficient, as the point of having briefs in the first place is merely to "acquaint the court with the issues in a case and to present argument that will enable the court to decide the case" and not to impose formal requirements as ends in themselves. *Id*. R. 38.9. The rules further contemplate that appellate courts will afford parties the opportunity to cure any formal or substantive briefing defects before disposing of the appeal based on such a defect rather than the merits. *See id.*; *see also Inpetco, Inc. v. Texas Am. Bank/Houston*, 729 S.W.2d 300, 300 (Tex. 1987) (regarding parallel provisions of former appellate rules). Finally, "[a] brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe." *See* Tex. R. App. P. 38.7.

There is no contention that Majeed failed to comply with these requirements in presenting, in his appellant's brief, the merits of the legal and factual-insufficiency grounds on which he seeks reversal. Hussain's contention is solely that Majeed initially requested the wrong appellate remedy for the errors he claims, seeking rendition when this Court could grant him no more than a

16

remand because he had preserved error solely through his motion for new trial. The appellate rules did require that Majeed include a "prayer" in his opening brief, which is described as "a short conclusion that clearly states the nature of the relief sought." *Id.* R. 38.1(j). Elsewhere, however, rule 43.3 instructs appellate courts, "[w]hen reversing a trial court's judgment," to "render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for a new trial." Tex. R. App. P. 43.3. Some of our sister courts have construed rule 43.3 in conjunction with the liberal briefing rules to conclude that an appellate court is empowered either to render judgment or remand for new trial based on its own application of rule 43.3 without regard to whether the appellant specifically prayed for such relief. *See, e.g.*, *Ibrahim v. Young*, 253 S.W.3d 790, 807 (Tex. App.—Eastland 2008, pet. denied); *Jakab v. Gran Villa Townhouses Homeowners Assoc., Inc.*, 149 S.W.3d 863, 870 n.7 (Tex. App.—Dallas 2004, no pet.) (citing *Kaspar v. Thorne*, 755 S.W.2d 151, 156-58 (Tex. App.—Dallas 1988, no writ) (supp. op. on reh'g); *Resource Savs. Ass'n v. Neary*, 782 S.W.2d 897, 903-04 (Tex. App.—Dallas 1986, writ denied)); *National Café Servs., Ltd. v. Podaras*, 148 S.W.3d 194, 200-01 (Tex. App.—Waco 2004, pet. denied). Under the reasoning of these decisions, a prayer that omits a request for the appellate remedy that is appropriate under rule 43.3 or requests the wrong one is considered to be the sort of briefing defect or irregularity that should either have no impact on the appellate court's judgment or that the parties should be permitted to cure. *See Kaspar*, 755 S.W.2d at 156-58.

We find these authorities persuasive and consistent with our understanding of the appellate rules and their underlying purposes. *Stevens* is not to the contrary. That case involved the oddity of a petitioner having explicitly requested the supreme court *not* to remand. *Stevens*,

11 S.W.3d at 185. The petitioner did not, as Majeed here, simply omit a request for a remand or request the wrong remedy in its prayer.

We hold that Majeed's omission of an explicit prayer for a remand in his appellant's brief does not waive his entitlement to such relief or limit our power to award it under rule 43.3 if we sustain any of his issues on appeal. And, to the extent there is any doubt, we grant, for the same reasons, Majeed's motion to amend his opening brief to add an explicit alternative prayer for a remand. *See* Tex. R. App. P. 38.7. In opposing leave to amend, Hussain disputes that "justice requires" that Majeed "be allowed to waive his right to a remand in his original brief and then unwaive that right after the case has been argued and submitted." Hussain presumes a view of the appellate rules' operation and purposes that we have rejected.

In sum, we hold that Majeed has preserved his no-evidence complaints for appeal—albeit solely through his motion for new trial—at least with respect to the duty and/or proximate cause elements of Hussain's negligence claim.

**Standard of review**

When a party is challenging the legal sufficiency of the evidence supporting an adverse finding on an issue on which an opposing party has the burden of proof, he prevails if the record shows any one of the following: (1) there is no evidence supporting a vital fact, (2) the evidence offered to prove a vital fact is no more than a mere scintilla, (3) the evidence conclusively establishes the opposite of the vital fact, or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). More than a scintilla of evidence exists when the evidence

18

supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex. 1995). Conversely, evidence conclusively establishes a vital fact when the evidence is such that reasonable people could not disagree in their conclusions. *City of Keller*, 168 S.W.3d at 814-17.

When conducting a legal-sufficiency review, we must view the evidence in the light most favorable to the trial court's findings, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 807. Moreover, we must indulge every reasonable inference that would support the district court's findings. *Id*. at 822. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *See id*. at 827.

When a party challenges the factual sufficiency of the evidence supporting an adverse finding on which the opposing party had the burden of proof, we should set aside the finding only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We must consider, weigh, and examine all of the evidence in the record, both supporting and against the finding, to decide whether the finding should be set aside. *See id*.; *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

**Proximate cause**

In his second issue, Majeed argues that there is legally or factually insufficient evidence that any breach of duty on his part to provide reasonable security measures proximately caused Hussain's injury. In this issue, Majeed focuses on the cause-in-fact component of proximate cause. Whether an act or omission is a cause in fact "cannot be established by mere conjecture, guess, or speculation." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005) (citing *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003)). If the defendant's negligence merely furnished a condition that made the injuries possible, there can be no cause in fact. *Id.* (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004)). "'The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of the resulting injuries . . . . [and] justify the conclusion that such injury was the natural and probable result thereof.'" *Doe*, 907 S.W.2d at 477 (quoting *Carey v. Pure Distrib. Corp.*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939)).

Hussain attributes his injury to Majeed's failure to repair and install with bulletproof glass the sliding window through which his assailant threw the Fix-a-Flat can. Hussain argues that the jury could have reasonably inferred that "a working window with bulletproof glass would have stopped the Fix-a-Flat can from hitting Hussain's eye." In Hussain's view, "It is not speculation to infer that a window that can stop a bullet will more likely than not stop a Fix-a-Flat can thrown by a teenager." Assuming without deciding that is so, it nonetheless remains speculative on this record whether or not the window would have been closed at the time Hussain's assailant threw the can.

In his testimony, Hussain described the circumstances surrounding the incident and how, in his view, the broken window was to blame for his injury:

Q:   Now, when the incident occurred, could you just go through exactly how everything happened as far as your interaction with the person who assaulted you?

A:   Yeah. The young kid came in and asked me for the cigarettes, and I refused him because he doesn't have an ID. He looked young, between 15 and 17. Then he came back. It was not a walk-in store; it was a drive-thru window, but the window was really big. And the window, you can only—if you're going to open, you're going to open one time in the morning. If you close, you put the stick behind that. There was no safety you can slide around, nothing. It was really broke.

. . . .

Q:   So is your testimony that he initially came and asked for cigarettes?

A:   Yeah, and then beer. And he doesn't have—the second time he came back, he said, I just told you I don't have my ID on me. And he walked back and he got the Fix-a-Flat Tire and just straight throw it and hit my eyes.

On cross-examination, Hussain provided the following additional details:

Q:   Can you explain—since we don't appear to have a picture of the store, can you explain what it looks like? Do you have to walk into the store to buy things, or is there a drive-thru?

A:   It was a drive-thru. It was a window probably like that big (indicating), but the window door was broke. I mean, when you opened the door in the morning, you've got to take the window on the side. So when you close, you put the big stick in the back to just close it. So there was no lock and nothing on the window.

Q:   All right. So it was a sliding window?

A:   Sliding window, but the sliding window was not working. It was broke.

21

Q:   Did not work.

A:   Yeah.

Q:   Okay.  And then—so you had to take the window out?

A:   Yeah, you've got to take the window out.

Q:   Okay. All right.  Now when this black male came in and—the one that threw the can at you—

. . . .

A:   You cannot walk into the store.  It's only a drive-thru, but the window was big.

. . . .

Q:   So he was in a car?

. . . .

A:   He was on foot.

. . . .

Q:   When's the—did you see him get the can—

A:   No.

Q:   —or you just saw him throw it?

A:   No.  he was like—the window is like this, and we had a display on the top for the cigarettes.  He asked me for the cigarettes, and I just went like this, and he just threw it straight to my eye, straight in my eye—

Q:   Okay.

A:   —with the can, yeah.

From the above testimony, a jury could only speculate as to whether the window, even if it had not been broken and consisted of bulletproof glass, would have been closed at the time of the assault. There was no evidence presented that would enable a fact-finder to draw a reasonable inference as to whether or when Hussain would have opened the window when serving customers (e.g., whether he would open the window when speaking with them versus only when actually exchanging money or goods) and whether or not Hussain would have had the window open when speaking to his assailant. Nor was there evidence to support reasonable inferences that Hussain could have reacted to his assailant's actions in time to grab the window and succeed in closing it before the can came flying at him. To the contrary, Hussain testified that he did not see the customer pick up the can and that the customer "just threw it straight" at Hussain. Hussain's testimony does not support a reasonable inference that if the window had been repaired and bulletproof glass installed, it would have prevented his injuries.

Hussain also testified that there was no security guard or on- or off-duty police officer on the premises. However, Hussain provided no evidence, either in the form of expert testimony or his own lay opinion, that the presence of a guard or similar security measures would have actually prevented or deterred the assault, especially given the sudden manner in which Hussain testified it occurred.

We conclude that there is no evidence that Hussain's injury would not have occurred but for the alleged negligence by Majeed. *See Jea v. Cho*, 183 S.W.3d 466, 469 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (in case involving injury arising from robbery at convenience store, finding that injured employee failed to prove proximate cause because "there is no empirical data, expert opinion, or other evidence that such [security] measures have actually had

23

any effect on preventing or reducing such crimes where they have been implemented, let alone a reasonable probability that this particular robbery or shooting would have been deterred or thwarted by using them"). In the alternative, we hold that the evidence of causation was factually insufficient.

We sustain Majeed's second issue.

**CONCLUSION**

Because our disposition of Majeed's second issue establishes his entitlement to the appellate remedy for which he has preserved error—a new trial— we need not reach his other issues. *See* Tex. R. App. P. 47.1. We reverse the district court's judgment and remand Hussain's claims for a new trial.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton;
   Dissenting Opinion by Justice Patterson

Reversed and Remanded

Filed: October 22, 2010